**MAX M., and his parents, Mr. & Mrs. M., Plaintiffs,**

v.

**James R. THOMPSON, et al., Defendants.**

**No. 82 C 6575.**

United States District Court, N.D. Illinois, E.D.

April 23, 1984.

Matthew Cohen, Canel, Aronson & Whitted, Chicago, Ill., for plaintiffs.

Paul Millichap, Asst. Atty. Gen., John Collins, Brydges, Riseborough, Morris, Franke & Miller, John Relias, N. Morrison Torrey, Vedder, Price, Kaufman & Kammholz, Chicago, Ill., for defendants.

## ORDER

BUA, District Judge.

This order concerns plaintiffs' motion for reconsideration by this Court of its decision in *Max M. v. Thompson*, 566 F.Supp. 1330 (N.D.Ill.1983), wherein this Court granted defendants' motions to dismiss certain counts of plaintiffs' complaint, either in their entirety or as to certain defendants. For the reasons stated herein, plaintiffs' motion is granted in part and denied in part.

## I. BACKGROUND

Plaintiffs' original complaint presented claims which, though grounded on several statutes, were basically derived from the Education for All Handicapped Children

Act (EAHCA).[1] The EAHCA is a funding statute under which states receive federal funds to assist them in providing educational services to the handicapped. Any state educational agency receiving funds under the EAHCA must establish procedures whereby handicapped children and their parents may protect their rights to a "free appropriate public education." 20 U.S.C. § 1415(a).

Plaintiffs are Max M., a child handicapped within the meaning of the EAHCA, and his parents. The parties named as defendants in the original complaint were designated as the "State Defendants," the "Intermediate Defendants," and the "Local Defendants." The State Defendants included: (1) James R. Thompson, Governor of Illinois; (2) the Illinois State Board of Education (ISBE); (3) Donald Gill, the Illinois Superintendent of Education; and (4) Edward Copeland, the Chairperson of the Illinois State Board of Education. The Local Defendants were: (1) New Trier High School District # 203 (District # 203); (2) the New Trier District # 203 Board of Education; (3) Ronald Bickert, Superintendent of Schools in District # 203, and (4) James Walter, Director of Special Education for District # 203. The final group of defendants, the Intermediate Defendants, included: (1) the North Suburban Special Education District (NSSED); and (2) Stanley Bristol, Superintendent of the NSSED.

The relevant facts taken from the complaint and exhibits thereto have been set forth in this Court's published order of July 1, 1983, *Max M., supra,* and are briefly recapitulated here. Max M. attended New Trier West, a public high school in Northfield, Illinois, from 1977 to 1981. Because of his disorganization, difficulty in writing, and anxiety, his academic performance was poor. During his freshman year, Max was referred to the District No. 203 Department of Special Education for evaluation. Intensive psychotherapy was recommended, but District 203 made no offer to provide the service at that time. The following summer, Max's parents formally requested District 203 to provide the recommended therapy during Max's sophomore year. District 203 developed an "individualized education plan" ("IEP") pursuant to the EAHCA for Max during his sophomore year, but the IEP did not include therapy. Max's condition worsened during his sophomore, junior, and senior years in high school. In the IEPs developed for each academic year, no provision was ever made for District 203 to provide intensive psychotherapy. Max's parents did not participate in the development of any of these IEPs. Ultimately, Max's parents themselves obtained private psychiatric treatment for Max at a cost to them of $8,855.

On May 15, 1981, District 203 notified Mr. and Mrs. M. of its decision to issue Max a high school diploma. Under the EAHCA, a handicapped child in Illinois becomes ineligible for continued benefits upon graduation. On May 21, 1981, Mr. and Mrs. M. requested a due process hearing, alleging violations of Max's right to a free appropriate public education. Subsequently, District 203 issued Max a diploma. On October 13, 1981, a state appointed hearing officer conducted a hearing, and ordered the diploma revoked, with services to continue based upon a new IEP. District 203 appealed the ruling to the Illinois State Board of Education, which, on February 19, 1982, reversed the decision of the hearing officer. Plaintiffs' complaint challenged this ruling on several grounds.[2] This Court dismissed all claims against all defendants except for plaintiffs' claim against the Local Defendants under § 1415(e)(2) of the EAHCA for reimbursement of the $8,855 expended by Mr. and Mrs. M. for Max's psychiatric treatment. *Max M.,* 566 F.Supp. at 1340.

---

1. Plaintiffs originally brought claims under the EAHCA, 20 U.S.C. § 1401 *et seq.;* § 504 of the Rehabilitation Act, 29 U.S.C. § 794; 42 U.S.C. § 1983; the due process and equal protection clauses of the fourteenth amendment; the Illinois School Code, Ill.Rev.Stat. ch. 122, ¶ 14–1.01 *et seq.;* and the Illinois Constitution, Art. I, § 2, Art. X, § 1.

2. *See supra* note 1.

In their instant motion, plaintiffs request reconsideration of essentially two of the dismissed claims. These claims sought: (1) compensatory remedial educational services to compensate Max for the deprivation of EAHCA benefits while he was in high school (Related to this claim, plaintiffs request an injunction to rescind Max's high school diploma in order to re-establish his eligibility under the EAHCA); and (2) injunctive relief prohibiting Illinois State Board of Education employees from serving as members of the State review panel, thereby ensuring impartial review. The second claim depends upon revival of the first. The basis for plaintiffs' motion is a case recently decided by the Seventh Circuit, *Timms v. Metropolitan School District of Wabash County, Ind.,* 722 F.2d 1310 (7th Cir.1983).[3] Plaintiffs argue that the *Timms* opinion, handed down after this Court's original decision in the instant case, states principles which, if followed by this Court, would require a result different than that which the Court previously reached. Plaintiffs urge this Court to reconsider its earlier order in light of the intervening controlling precedent.

## II. THE NATURE OF PLAINTIFFS' MOTION TO RECONSIDER

Plaintiffs specify no Federal Rule of Civil Procedure under which their motion to reconsider falls.[4] Nevertheless, this Court will treat the motion as one arising under Fed.R.Civ.P. 60(b). Rule 60(b) reads in relevant part:

(b) ... On motion and upon such terms as are just, the court may relieve a party

or his legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertance, surprise or excusable neglect; ... or (6) any other reason justifying relief from the operation of the judgment. The motion should be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment order, or proceeding was entered or taken....

The Seventh Circuit has stated:

The extraordinary relief provided by Rule 60(b) may be granted only upon a showing of exceptional circumstances. *Peacock v. Board of School Commissioners,* 721 F.2d 210, 213 (7th Cir.1983). A motion to vacate a judgment pursuant to Rule 60(b) is addressed to the sound discretion of the district court ... *Id.; Planet Corp. v. Sullivan,* 702 F.2d 123, 125 (7th Cir.1983).

*McKnight v. U.S. Steel Corp.,* 726 F.2d 333, 335 (7th Cir.1984).

■ A "60(b)(1) motion, filed within the time for appeal, calling the trial court's attention to an intervening controlling appellate decision, is a proper means to allow the trial court to correct a decision that would otherwise be corrected by a timely appeal." *Peacock,* 721 F.2d at 214, *construed in McKnight,* 726 F.2d at 336. However, "a change in applicable law after entry of judgment does not by itself justify relief under 60(b)." *McKnight,* 726 F.2d at 336. To satisfy Rule 60(b)(1), the motion to reconsider must be filed within the time

---

**3.** The original panel opinion in this case was issued on September 19, 1983, 718 F.2d 212. The Seventh Circuit amended its earlier opinion on November 18, 1983, "on further consideration of the petition for rehearing and Judge Cudahy's forceful dissent to that opinion," reaching the same result on partially different grounds. 722 F.2d at 1310. Any reference to *Timms* in this Order is to the amended opinion of Nov. 18, 1983, unless otherwise specified.

**4.** Plaintiffs style their motion a "common law motion," citing *Above the Belt, Inc. v. Bohannon*

*Roofing, Inc.,* 99 F.R.D. 99, 101 (E.D.Va.1983). Whether a common law motion to reconsider has current validity is a matter upon which the Court need not dwell, because plaintiffs' motion comes within the ambit of Fed.R.Civ.P. 60(b). In keeping with the purpose and intent of the Federal Rules, this Court will not hold a party bound by the labels he places on papers submitted to it. *See* Fed.R.Civ.P. 1; *Hadden v. Rumsey Products,* 196 F.2d 92, 95 (2d Cir.1952); *Bankers Mortgage Co. v. United States,* 423 F.2d 73, 77–79 (5th Cir.1970), *cert. denied* 399 U.S. 927, 90 S.Ct. 2242, 26 L.Ed.2d 793.

permitted to make an appeal on the judgment in question.[5]

■ On first glance it would appear that in the instant case, Max M. and his parents have allowed the applicable period to expire without appealing the dismissal of some of the claims in their complaint. However, upon examination, this clearly is not the case as this Court's order was not properly appealable in the first place. Under 28 U.S.C. § 1291, only final orders of district courts are appealable. An order, such as that in the case at bar, dismissing only certain counts of a complaint or dismissing a complaint as to only some among multiple defendants is not a final appealable order. *Division 241 Amalgamated Transit Union v. Suscy*, 538 F.2d 1264 (7th Cir.1976) *cert. denied*, 429 U.S. 1029, 97 S.Ct. 653, 50 L.Ed.2d 632 (1976); *Fletcher v. Gagosian*, 604 F.2d 637 (9th Cir.1979). As stated by the Eighth Circuit, "[i]t is a salutory rule, long adhered to by Federal courts that, except where otherwise provided by statute, a cause of action must be treated as a unit, not triable piecemeal, nor appealable in fragments." *Brandt v. Renfield Importers, Ltd.*, 269 F.2d 14, 16 (8th Cir.1959).

■ Surely, the time limitation on 60(b)(1) motions imposed by *Peacock*, and *DeFilippis v. United States*, 567 F.2d 341 (7th Cir.1977) (see n. 5, *supra*), cannot have been intended to apply to situations, such as the one *sub judice*, where the order in question was not properly appealable. Hence, there is no impediment to this Court's entertaining plaintiffs' motion to reconsider in light of an intervening controlling appellate decision. Here, where

there has not yet been a ruling on the pending cross-motions for summary judgment on Max M.'s single remaining claim, let alone a trial, the appearance of an intervening opinion by the Court of Appeals for our own circuit makes it incumbent upon this Court, in the interests of equity and judicial economy, to reconsider its partial dismissal of plaintiffs' complaint.[6]

## III. THE EFFECT OF TIMMS

The question now before the Court is whether, upon plaintiffs' present motion, the Court should reconsider its July 1, 1983 order in *Max M.*, in light of the Seventh Circuit's subsequent opinion in *Timms v. Metropolitan School District of Wabash County*, 722 F.2d 1310 (7th Cir.1983). The inquiry proceeds in four steps: (1) a brief summary of the reasoning in *Max M.;* (2) a discussion of the *Timms* opinion; (3) whether *Timms* operates as an intervening change in controlling precedent; and (4) if so, whether plaintiffs' claims should be reinstated.

### A. The Reasoning in *Max M.*

Plaintiffs' request for compensatory remedial services for Max allegedly required to undo the harm resulting from his deprivation of intensive psychotherapy while at New Trier High School was dismissed by this Court in its original order. In the absence of any authority from the Court of Appeals for the Seventh Circuit on the question of compensatory services, this Court turned to a decision by the Eighth Circuit, *Miener v. State of Missouri*, 673 F.2d 969 (8th Cir.1982). *Miener* was at that time generally viewed as the leading

---

**5.** This requirement rests on the generally accepted reasoning that a 60(b) motion is not intended as a substitute for an appeal. *Peacock supra*, 721 F.2d at 214; *DeFilippis v. United States*, 567 F.2d 341 (7th Cir.1977). Thus, in those cases where movants have failed to timely appeal, the Seventh Circuit has upheld district court denials of 60(b) motions to reconsider based on intervening change in applicable case law.

**6.** Courts have entertained motions to reconsider in light of intervening controlling precedent not only under subsection (1) of Rule 60(b), but also

under subsection (6). *See, e.g., DeFilippis v. United States*, 567 F.2d 341, 343 n. 5 (7th Cir. 1977). The two subsections have been generally recognized as mutually exclusive. *Inryco, Inc. v. Metropolitan Engineering Co., Inc.*, 708 F.2d 1225 (7th Cir.1983) *cert. denied*, — U.S. —, 104 S.Ct. 347, 78 L.Ed.2d 313 (1983); *Ben Sager Chemicals International, Inc. v. E. Targosz & Co.*, 560 F.2d 805, 810 n. 3 (7th Cir.1977). Because the instant motion appears to satisfy the requirements of 60(b)(I), there is no reason to inquire whether, in the alternative, the motion could be brought under subsection (6).

case on the issue of claims for compensatory educational services under the EAHCA.

In *Miener* the Eighth Circuit held that claims for compensatory services were essentially retroactive rather than prospective in nature. It reasoned that compensatory services were practically indistinguishable from reimbursement, since, like the award of a money judgment, they would be measured against past educational deprivation. *Id.* at 982. *Miener's* characterization of a claim for compensatory services as retroactive provided a common source for two distinct lines of reasoning in *Max M.*, one of which led to dismissing the claim as against the State Defendants, and the other dismissing the claim as against the Local and Intermediate Defendants.

With respect to the State Defendants, the retroactive nature of plaintiffs' claim raised an eleventh amendment bar. This Court followed *Miener*, which, in turn, had relied upon the U.S. Supreme Court's decision in *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), in finding an eleventh amendment immunity for the State Defendants. In *Edelman*, the Supreme Court held that the eleventh amendment prohibits a federal court from hearing suits brought against a state to recover damages that will come from the general revenues of the state. *Id.* at 668, 94 S.Ct. at 1358. As a corollary, the *Edelman* Court held that, when the relief sought from the state is retroactive rather than prospective in nature, the eleventh amendment immunizes a state from suit.[7] *Id.* at 688, 94 S.Ct. at 1368.

This Court also dismissed plaintiffs' claim for compensatory educational services against the Local and Intermediate Defendants. While no eleventh amendment bar operated as to these defendants, the *Miener* characterization of plaintiffs' claim as retroactive rather than prospective nevertheless again provided the first step in analyzing the claim. The second step was provided by the Seventh Circuit in *Anderson v. Thompson*, 658 F.2d 1205 (7th Cir.1981), a decision antedating *Miener* by one year. In that case, the court explored in great detail the legislative intent behind 20 U.S.C. § 1415(e)(2), the provision of the EAHCA permitting private actions. The *Anderson* court concluded that the clear purpose of § 1415(e)(2) was to offer prospective relief, as, for example, an injunction ordering a school to provide appropriate services in the future, for the period of time during which a handicapped student would remain eligible to receive benefits under the EAHCA. Under *Anderson*, only in very narrowly defined, exceptional circumstances is retroactive relief to be made available.[8] A threshold requirement for such relief, under *Anderson*, is that it be limited to reimbursement for plaintiff's out-of-pocket expenses incurred in obtaining services already received. *Anderson*, 658 F.2d at 1214. In view of the holdings in *Miener* and *Anderson*, this Court concluded that plaintiffs' claim for compensatory education must be dismissed because, first, under *Miener* it was not prospective in nature, and second, under *Anderson*, it was not a claim for reimbursement for

---

**7.** This line of reasoning led this Court to dismiss not only plaintiffs' claim against the State Defendants for compensatory services, but also plaintiffs' claim against the State Defendants for reimbursement for the $8,855 spent by Max's parents for psychiatric treatment. The second claim, as one purely for damages, fell squarely within the *Edelman* eleventh amendment bar without depending in any way on *Miener.* Hence, the dismissal of plaintiffs' damages claim against the State Defendants remains undisturbed.

**8.** To date, the Seventh Circuit has suggested two such exceptions: (1) where "the court deter-

mines that the services in dispute were necessary to protect the physical health of the child," *Anderson, supra,* at 1213; or (2) where the school has "acted in bad faith by failing to comply with the procedural safeguards of [20 U.S.C. § 1415] in an egregious fashion," *id.* at 1214. Because plaintiffs' claim for $8,855 expended by them for Max's psychiatrist stated facts which, if true, brought it under the second exception, the Court did not dismiss it as against the Local Defendants. *Max M., supra* at 1336. That claim is unaffected by the instant order.

actual out-of-pocket expenditures. *Max M.,* 556 F.Supp. at 1337.[9]

The Court also dismissed as moot plaintiffs' fourteenth amendment due process claim, since it was brought not on behalf of Max and others similarly situated, but only on behalf of Max himself and since, as to Max, it was not capable of repetition. *Id.* at 1340.

In summary, this Court's order of dismissal, based on the one hand on an eleventh amendment bar to relief under *Edelman, supra,* as to the State Defendants, and, on the other hand, on the narrow holding in *Anderson,* concerning the extent of allowable retroactive damages as to the Local and Intermediate Defendants, ultimately depended on the Eighth Circuit's characterization in *Miener,* that compensatory damages under the EAHCA are retrospective. Whether *Miener* survives the *Timms* decision in the Seventh Circuit is the question to be addressed next.

### B. The *Timms* Decision

After this Court's order of dismissal in *Max M.* was issued, the Seventh Circuit broke its silence on the question of claims for compensatory services under the EAHCA in *Timms v. Metropolitan School District of Wabash County,* 722 F.2d 1310 (7th Cir.1983).[10] In *Timms,* compensatory educational services were requested on behalf of a handicapped child, Sarah, whose IEP had been contested by her parents. During the 1979–1980 academic year, Sarah had been given special educational services for one hour per day instead of the full-day instruction requested by her parents. The parents ultimately prevailed in obtaining full-day instruction in September, 1980, but one month later, Sarah reached the EAHCA age eligibility cut-off. Hence, the Timms sought damages in the form of compensatory education to make up for the shortened 1979–80 year.

The Seventh Circuit recognized that Sarah's age would moot plaintiffs' claim for injunctive prospective relief "[u]nless compensatory education is a permissible remedy under the EAHCA for past inappropriate placement, so as to extend the state's obligation to provide a free appropriate education past its usual terminus...." 722 F.2d at 1314. The court continued, "Whether compensatory education is an available remedy for violations of the EAHCA is an unsettled question in this circuit." *Id.* The *Timms* court noted that the Eighth Circuit, in *Miener, supra,* had viewed such a remedy as retrospective and essentially similar to a damage award. But the Seventh Circuit countered, "whether the two remedies are indistinguishable is not so clear to us." *Id.* at 1315.

The *Timms* court, taking an approach entirely different from *Miener,* relied upon the U.S. Supreme Court desegregation case, *Milliken v. Bradley,* 433 U.S. 267, 289–90, 97 S.Ct. 2749, 2761–62, 53 L.Ed.2d 745 (1977). The Seventh Circuit stated:

> [T]he Supreme Court held that a desegregation decree including an order to provide remedial education, designed to compensate Detroit school children for the past effects of discrimination by supplementing their curriculum, withstood eleventh amendment scrutiny despite its compensatory purpose. The Court reasoned that Detroit's obligation to provide integrated education included an obligation to provide education free of the ghosts of past illegality:
>
>> [T]he injunction entered here could not instantaneously restore the victims of unlawful conduct to their rightful condition. Thus, the injunction here looks to the future, not simply to presently compensating victims for conduct and consequences completed in the past.
>
> *Milliken,* 433 U.S. at 290 n. 21 [97 S.Ct. at 2762 n. 21]. It concluded that the compensatory education order, unlike

---

**9.** The Court also dismissed plaintiffs' related request for an injunction rescinding Max's diploma. With the claim for compensatory education dismissed, the revocation of the diploma as a means of re-establishing Max's eligibility under the EAHCA became futile. 556 F.Supp. at 1339.

**10.** *See supra* note 4.

damages, was prospective and therefore not barred by the state's immunity. *Timms,* 722 F.2d at 1315.

The Seventh Circuit reiterated the *Milliken* Court's observation that, "that the programs are also 'compensatory' in nature does not change the fact that they are part of a plan that operates *prospectively* to bring about the delayed benefits of a unitary school system. We therefore hold that such prospective relief is not barred by the Eleventh Amendment." *Milliken,* 433 U.S. at 290, 97 S.Ct. at 2762, *quoted in Timms,* 722 F.2d at 1315 n. 1.

The *Timms* court reasoned that the logic of *Milliken* applied to claims for compensatory services under the EAHCA, *i.e.,* that an obligation placed upon the state to correct the effects of past educational shortfalls would not fall afoul of the eleventh amendment. *Timms,* 722 F.2d at 1315. The Seventh Circuit candidly recognized that recasting such relief as prospective would "undermine" the grounds of the *Miener* decision. *Id.*

Ultimately, the Seventh Circuit denied the Timms' claim for compensatory services, but on grounds completely unrelated to the foregoing discussion and the substantive merits of their claim. In *Timms,* plaintiffs had failed to exhaust their administrative remedies, thus barring their claim. *Id.* at 1316.

C. The Effect of *Timms* as an Intervening Controlling Appellate Precedent

■ There is no question that had *Timms* been handed down prior to this Court's order in *Max M.,* this Court would have followed the Seventh Circuit's line of reasoning rather than turning to the opinion of the Eighth Circuit in *Miener. Union Carbide v. Consolidated Rail Corp.,* 517 F.Supp. 1094, 1097 (N.D.Ill.1981); *Jorsch v. LeBeau,* 449 F.Supp. 485, 488, n. 9 (N.D.Ill.1978); *Safford v. United States,* 216 F.Supp. 226, 231 (E.D.Wis.1963). That the Seventh Circuit has articulated its position on compensatory services under the EAHCA in *dicta* is, for present purposes, unimportant. In the absence of a controlling Supreme Court ruling, a federal district court is required to give great weight to the pronouncements of its Court of Appeals, even though those pronouncements appear by way of *dictum.* "While not excused from making an independent examination of the precise issue presented, we cannot assume that our Court of Appeals writes merely for intellectual exercise." *Highland Supply Corp. v. Reynolds Metals Co.,* 245 F.Supp. 510, 512 (E.D. Mo.1965); *Accord, Cole v. University of Hartford,* 391 F.Supp. 888, 890, n. 3 (D.Conn.1975). In this case, there are unusually compelling reasons for following the *Timms* court's *dicta,* for it is *dicta* with a particularly persuasive effect. The reasoning that it embodies was first set forth in Judge Cudahy's dissent to the original *Timms'* opinion delivered a month earlier, on September 19, 1983. (The original *Timms* decision rested squarely on the *Miener* line of reasoning.) *See* 718 F.2d 212. So "forceful" was the dissent to the September 19 decision that the Seventh Circuit reconsidered and issued an amended opinion a month later. 722 F.2d 1310. The amended opinion expressly abandoned the *Miener* line of reasoning in favor of the principles summarized above. Under these circumstances, it seems fair to conclude that the *dicta* in *Timms* was clearly not a casual aside, but bears the hallmarks of a considered conclusion. As such, it is entitled to great deference.

D. Plaintiffs' Claims Reconsidered in Light of *Timms*

As noted earlier, plaintiffs have moved for reconsideration of essentially two of the claims previously dismissed: (1) the provision of compensatory-remedial educational services for Max; and (2) an injunction prohibiting Illinois State Board of Education employees from serving as members of the State administrative review panel. Each of these claims is reconsidered in turn.

1. Compensatory Services

■ *Timms* stands as an intervening controlling precedent that requires this Court to sustain plaintiffs' claim for com-

pensatory services against all defendants. First, the eleventh amendment does not immunize the State Defendants against plaintiffs' claim, since the relief sought is properly characterized as prospective, not retroactive. *Timms*, 722 F.2d at 1315, *Edelman v. Jordan*, 415 U.S. 651, 688, 94 S.Ct. 1347, 1368, 39 L.Ed.2d 662 (1974). Second, the Local and Intermediate Defendants can no longer look to *Anderson v. Thompson, supra,* and its limitation on retroactive relief for actual out-of-pocket expenditures. Because the compensatory services sought by plaintiffs have been recharacterized as prospective, they have been taken outside of the *Anderson* limitations and placed squarely within the sphere of claims intended under the EAHCA. *Timms*, 722 F.2d at 1315. Accordingly, this Court hereby reinstates plaintiffs' claim for compensatory-remedial educational services under the EAHCA against the State, Local and Intermediate Defendants. The Intermediate Defendants, against whom all claims had been dismissed, are reinstated as parties to the suit for purposes of this claim.[11]

Because plaintiffs' claim for compensatory services has been resurrected, their related request for revocation of Max's high school diploma is no longer moot. Hence, the Court reinstates plaintiffs' prayer for revocation of Max's diploma as well.[12]

### 2. Procedural Due Process Claim

■ If plaintiffs were to ultimately prevail in their suit for compensatory educational services, it is entirely possible that in the course of receiving those services, disputes might arise that would be handled through the State administrative review process. In plaintiffs' original complaint, they challenged the adequacy of this process under the fourteenth amendment. This constitutional challenge, held moot in this Court's original order, is clearly no longer moot. However, another ground exists requiring this Court to dismiss plaintiffs' due process-related claim for relief. Plaintiffs failed to challenge the impartiality of the State Board in the course of their administrative review proceedings, and, as a result, waived their claim for purposes of judicial review.

In *Colin K. by John K. v. Schmidt*, 715 F.2d 1 (1st Cir.1983), the First Circuit was faced with a similar due process challenge to the state administrative review process for EAHCA claims in Rhode Island. The challenging parties in that case raised the issue for the first time in the district court, although they had not taken advantage of the opportunity to do so earlier during two hearings before the state hearing officer. No excuse was tendered for their failure to raise the due process objection at a point

---

**11.** This Court's holding in *Max M.* that the claim for compensatory services was invalid as against any defendant made it unnecessary to consider the Intermediate Defendants' particularized motion for dismissal. The reinstatement of plaintiffs' claim, however, now requires the Court to rule on the Intermediate Defendants' motion. Basically, this group of defendants argues that, as the North Suburban Special Education District (NSSED), it is an entity that exists only pursuant to a joint agreement of a number of local educational agencies, among which are the Local Defendants. The Intermediate Defendants claim that they have no power to countermand instructions of the member districts nor to make any independent decisions. While admitting that they have the legal capacity to sue and be sued, the Intermediate Defendants argue that plaintiffs' complaint has failed to allege any independent act or participation by the NSSED or its director that caused the conditions of which plaintiffs complain, or any power or authority to remedy the situation.

The Intermediate Defendnts' contentions do not warrant dismissal. Plaintiffs' complaint alleges facts which, if true, state a claim against this group of defendants. Plaintiffs have alleged that the NSSED is a recipient of federal financial assistance under the EAHCA, and thus subject to the mandates of that statute. Additionally, plaintiffs, in their complaint, have incorporated by reference factual allegations expressly raised against the Local Defendants to the Intermediate Defendants as well. While the factual and legal issues raised by the Intermediate Defendants may ultimately be resolved in their favor by summary judgment, they do not provide this Court with a basis to dismiss plaintiffs' claim under Fed.R.Civ.P. 12(b)(6).

**12.** It is not clear at this point whether revocation of Max's diploma would ultimately be a prerequisite to Max's receipt of benefits under the EAHCA. However, it is not necessary to resolve this issue at this stage of the pleadings.

when the error might easily have been corrected. The court in *Colin K.* relied upon *U.S. v. Tucker Truck Lines,* 344 U.S. 33, 73 S.Ct. 67, 97 L.Ed. 54 (1952) for the proposition that "orderly procedure and good administration require that objections to the proceedings of an administrative agency be made while it has an opportunity for correction in order to raise issues reviewable by the courts." *Colin K.,* 715 F.2d at 5–6, *quoting Tucker,* 344 U.S. at 37, 73 S.Ct. at 69. *Accord, Lyons Savings & Loan v. Federal Home Loan Bank Bd.,* 377 F.Supp. 11 (N.D.Ill.1974).

In the instant case, Max M.'s parents pursued the administrative review process up to and including a hearing by the State review panel. However, at no time did plaintiffs challenge the impartiality of the state hearing official prior to the filing of their complaint before this Court. Accordingly, this Court holds plaintiffs' due process-related prayer for relief to have been waived.[13]

## IV. CONCLUSION

For the foregoing reasons, the Court hereby partially grants plaintiffs' motion to reconsider its prior ruling dismissing various claims in the instant case. Specifically, the Court hereby reinstates plaintiffs' claim for compensatory educational services under the EAHCA as against the State, Intermediate, and Local Defendants. The Court also reinstates plaintiffs' prayer for an injunction to revoke Max's diploma. Finally, the Court rules that plaintiffs' claim for injunctive relief with respect to the appointment of State employees to the State review panel shall remain dismissed as to all defendants.

IT IS SO ORDERED.

---

**13.** Of course, should this Court ultimately rule in favor of plaintiffs on their compensatory services claim, and should plaintiffs ever again, in the course of obtaining such services, have recourse to the State administrative review process, then and there plaintiffs would have a second chance to challenge the constitutionality of the hearing. Assuming that plaintiffs properly raised the question of impartiality before the State Board, any decision thereon by that Board would then become reviewable by a federal district court.