**MAX M., and his parents, Mr. & Mrs. M., Plaintiffs,**

v.

**James R. THOMPSON, et al., Defendants.**

**No. 82 C 6575.**

United States District Court, N.D. Illinois, E.D.

Sept. 4, 1984.

See also, D.C., 592 F.Supp. 1437.

Matthew D. Cohen, Canel, Aronson & Whitted, Chicago, Ill., for plaintiffs.

Ralph Miller, John Collins, Brydges, Riseborough, Morris, Franke & Miller, Paul Millichap, Asst. Atty. Gen. of Ill., John A. Relias, N. Morrison Torrey, Vedder, Price, Kaufman & Kammholz, Chicago, Ill., for defendants.

BUA, District Judge.

## ORDER

This order concerns the defendants' motion under Fed.R.Civ.P. 59(e) to amend this Court's order in *Max M. v. Thompson*, 585 F.Supp. 317 (N.D.Ill.1984) (*Max M. II*), wherein this Court reinstated the plaintiffs' claim against all defendants for compensatory educational services under the Education for All Handicapped Children Act (EAHCA). For the reasons stated herein, defendants' motion is granted in part and denied in part.

## I. BACKGROUND

The plaintiffs' original complaint presented claims which, although grounded on several statutes, were basically derived from the Education For All Handicapped Children Act (EAHCA), 20 U.S.C. § 1401 *et seq.* (1976).[1] The EAHCA is a funding statute under which states receive federal funds to assist them in providing educational services to the handicapped. Any state educational agency receiving funds under the EAHCA must establish procedures whereby handicapped children and their parents may protect their right to a "free and appropriate public education." 20 U.S.C. § 1415(A)(1976). The relevant facts have

---

1. Plaintiffs originally brought claims under the EAHCA, 20 U.S.C. § 1401 *et seq.;* § 504 of the Rehabilitation Act, 29 U.S.C. § 794; 42 U.S.C. § 1983; the due process and equal protection clauses of the fourteenth amendment; the Illinois School Code, Ill.Rev.Stat. ch. 122, ¶ 14–1.01 *et seq.;* and the Illinois Constitution, Art. I, § 2, Art. X, § 1.

been set forth in *Max M. II* and need not be restated in detail for purposes of this order.

The plaintiffs are Max M., a child handicapped within the meaning of the EAHCA, and his parents. The plaintiffs named as defendants in the original complaint three sets of defendants designated as the "State Defendants," the "Intermediate Defendants," and the "Local Defendants." The State Defendants included: (1) James R. Thompson, Governor of Illinois; (2) the Illinois State Board of Education (ISBE); (3) Donald Gill, the Illinois Superintendent of Education; and (4) Edward Copeland, the Chairperson of the Illinois State Board of Education. The Local Defendants were: (1) New Trier High School District # 203 (District # 203); (2) the New Trier District # 203 Board of Education; (3) Ronald Bickert, Superintendent of Schools in District # 203, and (4) James Wolter, Director of Special Education for District # 203. The final group of defendants, the Intermediate Defendants, included: (1) the North Suburban Special Education District (NSSED); and (2) Stanley Bristol, Superintendent of the NSSED.

In this Court's published order of July 1, 1983, *Max M. v. Thompson,* 566 F.Supp. 1330 (N.D.Ill.1983), *(Max M. I )* the plaintiffs' claims were addressed.[2] In *Max M. I,* this Court dismissed all claims against all defendants except for the claim against the Local Defendants under § 1415(e)(2) of the EAHCA for reimbursement of the $8,855 expended by Mr. and Mrs. M. for Max' psychiatric psychotherapy. *Max M.,* at 1340. Thereafter, in light of intervening Seventh Circuit precedent, the plaintiffs moved for reconsideration of their previously dismissed compensatory education and procedural due process claims. In an order entered on April 23, 1984, this Court resurrected the plaintiffs' claim for compensatory remedial educational services against all State, Intermediate and Local Defendants, but denied plaintiffs' request to have their procedural due process claim reinstated. *Max M. v. Thompson,* 585

F.Supp. 317 (N.D.Ill.1984). The impetus for this Court's new ruling with regard to the compensatory education claim was supplied by the recent Seventh Circuit decision in *Timms v. Metropolitan School District of Wabash County,* 722 F.2d 1310 (7th Cir.1983). The *Timms* decision, as intervening and controlling precedent, served to recharacterize the plaintiffs' request for compensatory education as a claim for prospective rather than retroactive relief. This recharacterization of the nature of the requested relief removed the plaintiffs' claim for compensatory education from the impediments discussed in *Max M. I* and provided a new basis for sustaining the plaintiffs' motion on the issue of relief.

## II. THE ISSUES

The State, Intermediate, and Local defendants oppose this Court's order reinstating the plaintiffs' claim for compensatory educational services. Essentially, the defendants contend that irrespective of the determinations made in *Max M. II,* the claim for compensatory education was waived by the plaintiffs through their failure to raise the second issue at the administrative hearing stage. The defendants also argue that the issue of compensatory education has become moot because Max has passed the age of 21 and is no longer eligible for EAHCA benefits. At a second level, the individual State Defendants argue that the plaintiffs have failed to allege sufficient acts of wrongdoing against them, and that as a matter of law, all named State Defendants should be released from this action. Alternatively, the State Defendants argue that irrespective of the Court's holding in *Max M. II,* the State Defendants carry no responsibility under the EAHCA for the decisions of the Local Defendants to provide educational services. Thus, the State Defendants contend they are not the proper defendants in an action for a local school district's alleged failure to provide adequate educational services to a handicapped child. Thus, four issues are presented in the defendants' motion for

**2.** *See supra* note 1.

reconsideration: (1) whether the plaintiffs failed to raise their claim for compensatory educational services at the state level administrative proceedings, thus affecting a waiver of such relief; (2) whether the plaintiffs' claim for compensatory educational services has become mooted because Max has exceeded the age under which EAHCA benefits are assured; (3) whether the plaintiffs' have alleged sufficient wrongdoing on the part of the individual State Defendants; and (4) whether the EAHCA accords ultimate responsibility to the State Defendants to assure the proper provision of educational services to handicapped children. Before addressing the issues raised, this Court will review the history of the plaintiffs' claim for compensatory education in *Max M. I* and *Max M. II.*

### III. DISCUSSION

### A. COMPENSATORY EDUCATION CLAIM IN MAX M. I

In *Max M. I,* this Court denied plaintiffs' requests for compensatory remedial educational services[3] and injunctive relief prohibiting the appointment of state employees to the state review panel. In stating their claim for compensatory education, the plaintiffs contended in their initial complaint that such relief was required to undo the harm caused to Max which resulted from his being deprived of intensive psychotherapy while at New Trier High School. In the absence of any authority from the Court of Appeals for the Seventh Circuit on the question of compensatory services, this Court looked to the Eighth Circuit decision in *Miener v. State of Missouri,* 673 F.2d 969 (8th Cir.1982). In *Miener,* the Eighth Circuit ruled that claims for compensatory services were essentially retroactive rather than prospective in nature. The *Miener* Court reasoned that compensatory services were indistinguishable from reimbursement, since such relief would be measured

against past educational deprivation. *Miener's* characterization of a claim for compensatory services as retroactive provided the first step in two distinct lines of reasoning in *Max M. I,* one of which led to dismissing the claim against the State Defendants. The other led to the dismissal of the claim against the Local and Intermediate Defendants.

With regard to the State Defendants, the nature of the plaintiffs' claim raised an Eleventh Amendment bar. In establishing that the plaintiffs' claim for compensatory services was retroactive in nature, this Court relied on the U.S. Supreme Court decision of *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). In *Edelman,* the Supreme Court held that when the relief sought from a state is retroactive rather than prospective in nature, the Eleventh Amendment immunizes the state from suit. *Id.* at 688, 94 S.Ct. at 1368. Thus, the plaintiffs' claim for compensatory services was dismissed against the State Defendants.

Although no Eleventh Amendment bar operated to insulate the Local and Intermediate Defendants from the plaintiffs' claim, the *Miener* characterization of compensatory services as retrospective relief again provided the first step in this Court's analysis of the case as to such defendants. The second step was provided by the Seventh Circuit in *Anderson v. Thompson,* 658 F.2d 1205 (7th Cir.1981). In *Anderson,* the Court explored the legislative intent behind 20 U.S.C. § 1415(e)(2) (1978), the EAHCA provision permitting private actions. The *Anderson* Court concluded that the purpose of § 1415(e)(2) was to offer prospective relief for the period of time during which a handicapped student would remain eligible to receive EAHCA benefits. *Anderson,* 658 F.2d at 1213–14. Only in narrowly defined "exceptional circumstances"[4] was retroactive relief, like reimburse-

---

**3.** Related to the claim for compensatory remedial education, the plaintiffs also requested that an injunction be issued to rescind Max' high school diploma in order to re-establish his eligibility under the EAHCA. This claim for injunc-

tive relief was also reinstated in the April 23, 1984 order. *Max M. v. Thompson,* 585 F.Supp. at 325.

**4.** To date the Seventh Circuit has suggested two such exceptional circumstances: (1) where "the

ment, to be available under the EAHCA. *Id.* The threshold requirement for such retroactive relief under *Anderson* is that the claim be limited to reimbursement for plaintiffs' out-of-pocket expenses incurred in obtaining services already received. *Id.* at 1214. Thus, in view of the *Miener* and *Anderson* holdings, this Court dismissed the plaintiffs' compensatory education claim because under *Miener,* the claim was not prospective in nature and under *Anderson,* it was not a claim for out-of-pocket expenditures. *Max M.,* 566 F.Supp. at 1337.

## B. COMPENSATORY EDUCATION CLAIM IN MAX M. II

Shortly after this Court's order in *Max M. I,* the Seventh Circuit ruled on the issue of compensatory services under the EAHCA in *Timms v. Metropolitan School District of Wabash County,* 722 F.2d 1310 (7th Cir.1983). In *Timms,* the plaintiffs requested compensatory educational services for their handicapped child, Sarah. Contesting the Individualized Educational Program (IEP) developed for Sarah, the parent plaintiffs sought full day rather than part-time special education for their daughter. Full time instruction was granted in September of 1980, but one month later, Sarah reached the EAHCA age eligibility cut-off and was refused further educational services. The Timmses brought suit seeking relief in the form of compensatory education for the shortened 1979–1980 year.

Addressing the plaintiffs' claim, the Seventh Circuit recognized that Sarah's age would moot the plaintiffs' request for injunctive relief unless compensatory education is a permissible remedy under the EAHCA for the past inappropriate placement, so as to extend the state's obligation to provide a free appropriate education past its usual termination. *Timms,* 722 F.2d at 1314. The *Timms* court noted the Eighth Circuit holding in *Miener* which

court determines that the services in dispute were necessary to protect the physical health of the child," *Anderson,* 658 F.2d at 1213; or (2) where the school has "acted in bad faith by

compared a claim for compensatory educational services to a claim for a damage award and characterized the request for educational services as retrospective in nature. However, the *Timms* court refused to adopt the *Miener* reasoning stating, "Whether the two remedies are indistinguishable is not so clear to us." *Id.* at 1315. Instead, the Seventh Circuit relied on the U.S. Supreme Court desegregation case, *Milliken v. Bradley,* 433 U.S. 267, 97 S.Ct. 2749, 53 L.Ed.2d 745 (1977) to come to the conclusion that the plaintiffs' request for compensatory educational services was a claim which was prospective in nature. Although the plaintiffs' claim for compensatory services in *Timms* was ultimately denied on other grounds, this Court determined in *Max M. II* that the position taken in dicta by the *Timms* court was not a causal aside, but a considered conclusion by the Seventh Circuit entitled to considerable deference.

Reconsidering *Max M. I* in light of the *Timms* decision, this Court reinstated the plaintiffs' claim for compensatory educational services against all defendants. The recharacterization of the relief requested as prospective in nature removed the bar of the Eleventh Amendment which had insulated the State Defendants under *Edelman v. Jordan,* 415 U.S. 651, 688, 94 S.Ct. 1347, 1368, 39 L.Ed.2d 662 (1974). Moreover, the Local and Intermediate Defendants were no longer immune from action under the limitation on retroactive relief set out in *Anderson v. Thompson.* The plaintiffs' claim, characterized as prospective under *Timms,* now rested squarely within the sphere of claims intended under the EAHCA.

## C. THE WAIVER ISSUE

All defendants assail the plaintiffs' reinstated claim for compensatory education alleging that the Ms failed to raise this request for relief at the administrative re-

failing to comply with the procedural safeguards of [20 U.S.C. § 1415] in an egregious fashion. *Id.* at 1214.

view level. The defendants contend that no specific requests for special education for Max were ever made to the state review boards, nor did the Ms ever specifically indicate what additional services should be provided.

The defendants point to a statement in the Illinois State Board of Education opinion concerning the plaintiffs' administrative appeal which states:

[Plaintiffs] do not specifically indicate what additional services should be offered to Max at this time. While it is clear that the school district failed to provide Max appropriate related services during his four-year program, absent evidence of what further instructional services are necessary, related services cannot be provided to him now by the school district.

*In Re Max M.*, ISBE Admin. Order No. SE–58–81 at 5 (Feb. 19, 1982).

Thus, the defendants take the position that irrespective of this Court's order in *Max M. II,* the plaintiffs' claim for compensatory educational services must be dismissed.

The plaintiffs respond to the defendants contentions by referring to excerpts found in position statements submitted by the Ms during the administrative review process. Contained in the plaintiffs' position papers are the following statements:

New Trier High School District failed to provide a free, appropriate public education to [Max M.]. Appropriate services in the area of learning disabilities were not provided...

The parents would request that the hearing officer enter an immediate order for the school district to provide therapy and other appropriate services for an appropriate period of time with a private therapist and other related professionals chosen exclusively by family and Max. *The hearing officer's attention is called to the recommendation contained in Dr. Richard Aronoff's report which parents submit should be implemented.* (Position statement page 19) (emphasis added)

In Dr. Aronoff's report, the following recommendations were made:

1. [Max] is in need of intensive therapeutic involvement. He most likely would need at least two hours a week, and possibly three hours a week of therapeutic involvement to show any significant gains in the foreseeable future. This is especially significant in view of the suicidal ideology and lack of self direction noted throughout the protocols.

2. *Vocational training or advanced educational programming to challenge his intellectual ability is a high priority need.* Investigation of vocational areas which will involve his high level reasoning skills with minimal social interaction needs, as well as taking into account his high reading and math abilities, should provide some direction. One area to be considered would be that of computer science.

3. In order for [Max] to benefit from an educational program leading to vocational skills in independent functioning, he will most likely need regular daily resources from someone who can act the role of mentor in getting him to develop self-confidence and responsibility for completion of tasks and the use of his high intellectual potential. (Aronoff report, September 8, 1981, page 7) (emphasis added).

The plaintiffs thus argue that no waiver occurred as they properly raised their request for compensatory education during the administrative proceedings.

Reviewing the ISBE administrative order concerning the Ms' claims, it is clear that some reference to Dr. Aronoff's recommendations were made to the Board. Evidence of this is found in the Board's finding of facts: "[The Ms] had an independent psychological evaluation conducted on Max' behalf in late summer, 1981, wherein the examiner ... recommended that he be afforded additional vocational training or advanced educational programming." *In Re Max M.*, ISBE Admin. Order No. SE–58–81 at 3. Moreover, among the conclusions of law reached by the ISBE in their adminis-

trative order, the following statement is found: "Max thereby indicates that he seeks continued educational services, including psychotherapy and job training consistent with the position propounded by his parents." *Id.* at 4. Interpreting the ISBE's statement concerning the failure of the parents to request *specific* educational services in light of the Board's findings of fact and law, the issue appears to have been not whether the plaintiffs raised their claim for compensatory education, but whether, in the opinion of the ISBE, the plaintiffs' request was made with sufficient specificity.

 Section 1415(e)(2) of the EAHCA provides in part:

> In any action brought under this paragraph the court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and basing its decision on the preponderance of evidence, shall grant such relief as the court determines is appropriate. 20 U.S.C. § 1415(e)(2) (1976).

This provision of the EAHCA is generally interpreted to require courts to use a *de novo* standard of review when presented with an appeal from a state agency decision. *Roncker On Behalf of Roncker v. Walter,* 700 F.2d 1058 (6th Cir.1983); *Doe v. Anrig,* 561 F.Supp. 121 (D.C.Mass.1983). Accordingly, this Court is not bound by the ISBE's opinion that the plaintiffs failed to sufficiently raise their claim for compensatory education. Although the claims of the plaintiffs for vocational or advanced educational programming might have been cast in more specific terms, no doubt exists that the plaintiffs' requests for compensatory educational services were made and recognized at both local and state level administrative proceedings. With regard to the issue of specificity in the requested relief, this Court is not of the opinion that the plaintiffs' claim for compensatory educational services at the administrative proceedings was so lacking in clarity so as to effect a waiver. The plaintiffs' request that Dr. Aronoff's proposals be implemented as part of Max' IEP raised the compensatory education issue during the administrative proceedings with sufficient specificity to preserve this claim for *de novo* review by this Court. Accordingly, the defendants' motion to amend is denied as to the issue of waiver.[5]

### D. THE EXCESSIVE AGE ISSUE

The defendants also contend that the plaintiffs' request for compensatory education has become moot since Max has reached the age over which EAHCA services are no longer assured to handicapped persons. Under 20 U.S.C. § 1412(2)(B) (1976), the defendants note that the EAHCA requires all participating states assure "a free and appropriate education will be available for all handicapped children between the ages of three and twenty-one." Based on this EAHCA provision, the defendants argue that the EAHCA cannot be construed to require any state to provide educational and related services to a handicapped child once that child has reached the age of 21. Thus, because Max reached his 21st birthday on June 6, 1984, the defendants assert that they have no legal obligation to render Max further EAHCA services.

 Certainly, § 1412(2)(B) of the EAHCA mandates that a participating state assure a free appropriate public education for eligible children, three years and older, until they reach the age of twenty-one. Yet, this minimum requirement of assurance by state governments desiring to receive federal funds under the EAHCA does not necessarily preclude all claims for services after a handicapped child has reached the age of 21. *Campbell v. Talladega County Board of Education,* 518 F.Supp. 47 (N.D. Ala.1981). In *Campbell,* a handicapped child brought suit against various school board officials in Alabama alleging, among

---

**5.** Having made the determination that the plaintiffs did not waive their claim for compensatory education at the administrative level, this court need not address the plaintiffs' arguments concerning the *de novo* powers of this court in EAHCA settings.

other things, that he had been deprived of his right to a free appropriate public education under the EAHCA. Determining that the Individualized Educational Program (IEP) offered to the plaintiff child was not appropriate under the EAHCA, the Court in *Campbell* ordered a new IEP with specified provisions to compensate for the past inadequacies in the child's public education. *Id.* at 55–56. This new IEP was to be implemented by the defendant school boards "for two years past [plaintiff's] twenty-first birthday." *Id.* at 56. Thus, compensatory educational services were ordered by the *Campbell* court even though the services were to be provided to a plaintiff who would exceed 21 years of age before the ordered services would terminate.

■ As noted earlier, the EAHCA empowers a reviewing court to "grant such relief as the court determines appropriate." 20 U.S.C. § 1415(e)(2) (1976). Implicit in the *Campbell* decision is the notion that some situations may arise whereby EAHCA benefits must be assured past age 21 to insure a free appropriate public education will have been made available to a handicapped child. Certainly, Congress could not have intended for a child who has been denied a free appropriate education during his high school years to be precluded from compensatory educational relief simply because of the time consuming rigors of administrative appeal and judicial review. If the reasoning of the defendants is adopted, and no services could ever be required after a child has passed the age of 21, then a child's claim for compensatory education in the face of past educational deprivation could be measured by the success of the

dilatory techniques utilized by the defending school board. This Court is of the opinion where such circumstances exist, Congress could not have intended § 1412(2)(B) to prevent compensatory educational relief. Rather, such circumstances require the reviewing court to "grant such relief as the court determines is appropriate." 20 U.S.C. 1415(e)(2)(1976).

■ This Court has already determined that the Ms' procedural rights under the EAHCA were violated in that the Ms were never given proper written notice of their right to a due process hearing and other procedural safeguards until they were notified that Max would receive a diploma and no longer be eligible for EAHCA services. *Max M. v. Thompson*, 592 F.Supp. 1437 No. 82 C 6575 slip op. (N.D.Ill. August 13, 1984) (*Max M. III*). Where, as here, a handicapped child and his family have not been informed of their right to seek review of school board decisions concerning the proper IEP for their child until the child is to receive his high school diploma, the minimum qualifying requirements in § 1412 for state governments to receive federal funds under the EAHCA will not automatically eliminate claims for compensatory educational services from eligible persons over the age of 21. This Court is of the opinion that when these circumstances exist, Congress intended the reviewing court to exercise the power granted in § 1415(e)(2) and sustain the plaintiffs' claim for relief past the normal eligibility period. Accordingly, this Court denies the defendants' motion to amend on the issue of mootness and therefore sustains the plaintiffs' claim for compensatory education.[6]

---

6. Inapposite are *Goldberg v. Cronin*, No. 79 C 5039, slip op. (N.D.Ill. April 22, 1982) (Kocoras, J.); and *Adams Central School District No. 090, Adams County v. Deist*, 214 Neb. 307, 334 N.W.2d 775 (1983). In *Adams Central School District*, the Nebraska Supreme Court considered the rulings of an administrative hearing officer who granted 16 months of compensatory education to a handicapped individual who was 21 years old. The Court rejected the finding of the hearing officer with regard to the compensatory education issue stating: "There is no authority under this statutory scheme by which

the hearing officer could grant free appropriate public education benefits to [plaintiff] beyond his 21st birthday. As such, this grant was an abuse of the hearing officer's discretion." *Adams Central School District*, 214 Neb. at 325, 334 N.W.2d at 786. While this Court expresses no opinion on whether an administrative review officer has the authority to grant educational services to a handicapped person over the age of 21, the *Adams Central School District* holding does not address the issue of whether a reviewing court, which under § 1415(e)(2) has the power to grant such relief as it determines ap-

## E. THE SUFFICIENT ALLEGATIONS ISSUE

In a separate motion, the State Defendants take the position that the plaintiffs have failed to allege any acts of specific wrongdoing against them which give rise to a claim for compensatory education. The State Defendants argue that, like a claim for reimbursement, a claim for compensatory educational services can only be made upon a demonstration that the State Defendants acted in bad faith under "exceptional circumstances" described in *Anderson v. Thompson,* 658 F.2d 1205 (7th Cir.1981).[7] These defendants contend that the plaintiffs have not alleged any actions on the part of any of the State Defendants that could possibly relate to either of the *Anderson* exceptional circumstances. Thus, the State Defendants argue, they should be released from the plaintiffs' compensatory education claim.[8]

Returning to the reasoning which led this Court to reinstate the plaintiffs' claim for compensatory educational services against all defendants in *Max M. II,* this Court is unable to accept the State Defendants' argument. The core of the State Defendants' position is that a claim for compensatory educational services is essentially like a claim for reimbursement, because either type of relief would be measured against past educational deprivation. Thus, like a claim for damages, a claim for compensatory education under *Anderson* would require a showing of "exceptional circumstances," which the plaintiffs have failed to allege. However, the State Defendants' subtle classification of compensatory education as a request for retroactive relief under *Anderson* is erroneous. The recent Seventh Circuit holding in *Timms v. Metropolitan School District of Wabash County,* clearly states that a claim for compensatory education is a request for relief which is prospective in nature. *Timms,* 722 F.2d at 1315. Thus, the *Anderson* holding has no effect on the plaintiffs' claim since no claim has been made for retroactive relief.

The plaintiffs have alleged that State Defendant Gill, as State Superintendent of Education, State Defendant ISBE, and former ISBE Chairman, State Defendant Copeland, were either directly or indirectly responsible for the administrative order which denied Max' claim at the state review level. As the "exceptional circumstances" requirement of *Anderson* is inapplicable to the relief requested, the plaintiffs have sufficiently stated their claim for compensatory educational services and the

propriate, can grant compensatory education to a 21-year-old recipient. Thus *Adams Central School District* is not dispositive of the issue before this Court.

In *Goldberg v. Cronin,* Michael, the plaintiff child, requested compensatory education until he reached the age of 22. *Goldberg,* No. 79 C 5039, slip op. at 1–2. Addressing this request, the court in *Goldberg* noted that Michael was currently employed and not attending any school. *Id.* The *Goldberg* court observed that the plaintiff, through silent admission, did not evince any desire to attend school. Thus, the court in *Goldberg* concluded: "Because plaintiff has failed to establish that he still wishes to be placed in an appropriate educational facility, this Court is simply unable to fashion the equitable relief sought in Count II. There appears to be no controversy at issue now." *Id.* After making this determination, the *Goldberg* court then proceeded to refute the plaintiffs' defensive argument that EAHCA benefits, under § 1412(2)(B), were to inure to recipients during the age of 21 until reaching the age of 22. *Id.* Rejecting the plaintiffs' interpretation, the court suggested that § 1412(2)(B) meant benefits were required *until* the eligible child's 21st birthday. *Id.* This Court, for the reasons previously stated, is unable to apply the *Goldberg* determination to the instant case.

7. *See supra* note 5.

8. In the context of this issue, State Defendants argue that this Court's order in *Max M. I* explicitly released them from any actions under the EAHCA when this Court stated, "If plaintiffs state a claim under EAHCA at all, it is stated only against District 203." *Max M.,* 566 F.Supp. at 1336, n. 9. This argument is without merit. The comment of this Court cited by the State Defendants referred only to the issue of reimbursement under the EAHCA and not the issue of compensatory education. *See Max M.,* 566 F.Supp. at 1336–38.

1460

State Defendants' motion to amend is denied as to this issue.[9]

## F. RESPONSIBILITY OF STATE DEFENDANTS UNDER THE EAHCA

In the last series of arguments presented in this motion, the State Defendants raise the issue of their responsibility for actions taken by Local School District 203 under the EAHCA. Noting that the plaintiffs have named State Defendants Thompson, Gill, and Copeland in their individual as well as official capacities, the State Defendants argue that no cause of action can be sustained against them in their private capacities. Moreover, the individual State Defendants argue that because District 203 was responsible for the formation of Max' IEP and for informing the Ms of their procedural rights under the EAHCA, the State Defendants breached no duty owed to the plaintiffs under the EAHCA. Thus, contending that they did not directly violate any rights of the plaintiffs, the State Defendants pray for dismissal of the plaintiffs' compensatory education claim. Finally, State Defendant Thompson raises his own argument for dismissal based on the recent decision in *Hayward v. Thompson,* 593 F.Supp. 57 (N.D.Ill.1984) (Shadur J.). This Court will address these arguments *seriatim.*

■ As a general principle of law, public officials are immune from personal liability for errors in judgment in the performance of duties within the scope of their public authority. *Tcherepnin v. Franz,* 570 F.2d 187, 191 (7th Cir.1978). In Illinois, however, the immunity conferred on public officials generally is not absolute, but qualified. *Id.,* at 191, *citing People ex rel. Munson v. Bartels,* 138 Ill. 322, 27 N.E. 1091 (1891). To displace this qualified immunity, a claimant must show that the defendant official was negligent in the per-

formance of ministerial duties or exhibited malicious and corrupt conduct in the performance of discretionary duties. *Id.*

■ Applying the foregoing precedent to the instant case, this Court is compelled to dismiss the plaintiffs' claim for compensatory education against the State Defendants in their individual capacities. The State Defendants fulfilled their ministerial duties under the EAHCA by providing the plaintiffs with a proper and timely administrative hearing concerning Max' IEP. However, because the process of determining the suitability of a handicapped child's IEP involves the use of discretion on the part of the state officials, allegations of malicious and corrupt conduct must be set forth by a plaintiff seeking to sue state officials in their individual capacities for an alleged erroneous determination during an EAHCA required administrative hearing. Reviewing the pleadings, this Court is unable to find any allegations of malicious and corrupt conduct on the part of the State Defendants. Therefore, the State Defendants' request to dismiss any claims set forth against them in their individual capacity is granted, and this Court's order in *Max M. v. Thompson,* 585 F.Supp. 317, 325 (N.D.Ill.1984) is modified accordingly.

■ Turning to the State Defendants' argument that they, in their official capacity, carry no responsibility for the alleged violations of the EAHCA committed by District 203, this Court directs the State Defendants' attention to 34 C.F.R. § 300.600 (1983) which states:

(a) The State educational agency is responsible for insuring;

(1) That the requirements of this part are carried out; and

(2) That each educational program for handicapped children administered within the State, including each program administered by any other public agency:

**9.** As the State Defendants' request to dismiss the plaintiffs compensatory educational services claim is denied as to this issue, the Court need

not address the State Defendant's argument that a claim for related services cannot exist without a valid claim for educational services.

(i) Is under the general supervision of the persons responsible for educational programs for handicapped children in the State educational agency, and

(ii) Meets education standards of the State educational agency (including the requirements of this part).

(b) The State must comply with paragraph (a) of this section through State statute, State regulation, signed agreement between respective agency officials, or other documents.

This provision of the C.F.R. is a restatement of 20 U.S.C. § 1412(6), the EAHCA section defining the scope of the state educational agency's responsibilities. An interpretive comment follows 34 C.F.R. § 300.600 which explores the congressional intent behind the inclusion of § 1412(6) in the EAHCA. Citing a legislative report referring to 20 U.S.C. § 1412(6), the comment takes the position that Congress intended the central point of responsibility for the implementation of all services under the EAHCA to rest with the state educational agency. The basis for the comment's position appears to be derived from excerpts from Senate Report No. 94–168, p. 24 (1975), U.S.Code Cong. & Admin.News 1975, pp. 1425, 1448 which states:

> This provision is included specifically to assure a single line of responsibility with regard to the education of handicapped children, and to assure that in the implementation of all provisions of this Act and in carrying out the right to education for handicapped children, the State educational agency shall be the responsible agency * * *.
>
> Without this requirement, there is an abdication of responsibility for the education of handicapped children. Presently, in many States, responsibility is divided, depending upon the age of the handicapped child, sources of funding, and type of services delivered. While the Committee understands that different agencies may, in fact, deliver services, the responsibility must remain in a cen-

tral agency overseeing the education of handicapped children, so that failure to deliver services or the violation of the rights of handicapped children is squarely the responsibility of one agency.

When construing a provision of a statute, a Court may examine the legislative history of the statute to ensure that the meaning ascribed to the words of a given provision is in accord with what Congress intended. *Pompano v. Michael Schiavone & Sons, Inc.,* 680 F.2d 911 (2nd Cir.1982). Given the unambiguous nature of the language of § 1412(6) coupled with the unequivocal statements of congressional intent found in Senate Report 94–168, p. 24 (1975), little doubt exists that § 1412(6) of the EAHCA places the state educational agency in a position of central responsibility for the education of handicapped children. As State Defendants Gill, Copeland, and the ISBE are all part of the state educational agency to which the EAHCA refers, ultimate responsibility rests with them to ensure that the provisions of the EAHCA are carried out. The motions of State Defendants Gill, Copeland, and the ISBE are therefore denied as this Court sustains the plaintiffs' claim for compensatory education against these defendants in their official capacity.

■ Finally, State Defendant Thompson, in a separate motion, argues that he is entitled to dismissal from the plaintiffs' claims under the authority of *Hayward v. Thompson,* 593 F.Supp. 57, 58 (N.D.Ill.1984) (Shadur J.). In *Hayward* the plaintiffs brought an action against various state and local officials including Thompson, alleging that their rights under the EAHCA were violated. Granting a motion to dismiss the plaintiffs' claims, the court in *Hayward* explained that no basis existed for joining Governor Thompson since no activity of the Governor was alleged to have caused the harm suffered by the plaintiffs. *Id.* The *Hayward* court noted that even with regard to the Governor's duty to appoint the members

of the ISBE, Illinois law requires the advice and consent of the Illinois Senate. *Id.* As this Court has already determined, § 1412(6) of the EAHCA places the central point of responsibility for educating handicapped children on the state educational agency. This Court, however, is unable to find any similar provision which accords responsibility for the EAHCA on the Governor of a participating state. While it may be true that State Defendant Thompson was responsible for appointing the members of the ISBE, as the *Hayward* decision points out, this power is limited by the requirement of confirmation by the Illinois Senate under Ill.Rev.Stat. ch. 122 ¶ 1A–1. Thus, this Court agrees with the holding in *Hayward,* and dismisses State Defendant Thompson from the plaintiffs' claims.

### CONCLUSION

The motion of the defendants to amend this Court's order in *Max M. II* is granted in part and denied in part. Accordingly, this Court amends its April 4, 1984 order in *Max M. II* under Fed.R.Civ.P. 59(e) to include the dismissal of State Defendant Thompson in his official capacity and all State Defendants in their individual capacities from the plaintiffs' claim for compensatory education.

The remainder of the defendants' motion to amend is denied.

IT IS SO ORDERED.