Rory CAPELLO, et al., Plaintiffs,

v.

**DISTRICT OF COLUMBIA BOARD OF EDUCATION, et al., Defendants.**

Civ. A. No. 79–1006.

United States District Court, District of Columbia.

July 27, 1987.

Matthew B. Bogin, Bogin and Eig, Washington, D.C., for plaintiffs.

Martin L. Grossman, Deputy Corp. Counsel, Civ. Div., Melvin W. Bolden, Jr., Chief, Sp. Litigation Section, Katharine S. Goodbody, Asst. Corp. Counsel, Washington, D.C., for defendants.

## MEMORANDUM OPINION

BARRINGTON D. PARKER, Senior District Judge:

Plaintiffs are before this Court on a motion to reinstate an attorneys' fees award pursuant to the recent amendment to the Education of the Handicapped Children's Act ("EHA"), 20 U.S.C. § 1415 (1986). The genesis of the motion was plaintiff's challenge to a refusal of the District of Columbia Board of Education to provide an appropriate educational program for their autistic child, Rory Capello. On January 23, 1980, this Court ruled that the Board's proposed education plan was inadequate and ordered defendants to place and fund Rory at the Concord School in Yellow Spring, West Virginia, as required by both the EHA and the Rehabilitation Act of 1973 as amended 29 U.S.C. § 701. Thereafter, on June 9, 1982, this Court awarded plaintiff's attorneys' fees in the amount of $8,424 in accordance with the fee provision, Section 505 of the Rehabilitation Act. Defendants appealed that award and on June 28, 1982 our Circuit Court stayed the fee award pending the Supreme Court's decision in *Smith v. Robinson*, 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984). In *Smith*, the Court held that the EHA was an exclusive remedy for securing special education programs and forbade parties from proceeding concurrently under the Rehabilitation Act. The *Smith* Court further held that since Congress failed to include a fee provision in the EHA, such awards were impermissible. Based on *Smith*, our Circuit Court vacated plaintiffs' fee award on August 17, 1984, 743 F.2d 45.

Shortly thereafter, Congress enacted the Handicapped Children's Protection Act of 1986, 20 U.S.C. § 1415(e) (1986) ("Children's Protection Act") to reverse the consequences of *Smith.* The relevant provisions of the enactment provide that the Court, in its discretion, can award reasonable attorneys' fees to the prevailing party. The Act also provides that the fee provision shall apply to "actions or proceedings ... brought after July 3, 1984 and actions or proceedings prior to July 4, 1984 which were pending on July 4, 1984." Pub.L. 99–372, § 25, 100 Stat. 798. This provision applied the amendment retroactively to the date of the *Smith* decision.

Plaintiffs seek to reinstate their attorneys' fee award arguing that since the Circuit Court did not vacate the award until August 17, 1984, their action was still "pending" on July 4. The Board of Education opposes plaintiff's application on both statutory and constitutional grounds. First, the Board argues that a case is pending for purposes of the statute only if the merits of the matter were unresolved. Since the only remaining issue on July 4 was the appropriateness of a fee award, plaintiffs' case was not pending within the meaning of the statute. Second, the Board asserts that even if Congress intended to make the law retroactive to include both cases pending on the merits and on fee awards, it has no power to do so. It contends that retroactive application of the fee provision violates the separation of powers doctrine, exceeds Congress' power under the spending clause, and interferes with the District's sovereign immunity. Finally, the Board argues that reinstatement of the earlier fee award is inappropriate because that award was calculated on a more generous formula than permitted under the new amendment.

## I.  The Meaning of Pending

### A.

■ The traditional starting point for interpreting a statute is the statutory language itself.  In the Children's Protection Act, the phrase "actions or proceedings ... which were pending" on July 4, 1984 stands alone, unqualified.[1]  The provision does not restrict application to those cases pending on the merits; it makes no distinction whatsoever between those cases where the fee application remained the only issue "pending" and those cases where issues concerning the merits were still in dispute. Further, the retroactivity provision applies exclusively to the attorneys' fee provision. "[A]s a result, the plain meaning of 'cases pending' in specifying the effective date of the fee statute presumably would be commonly understood to include pending fee applications." *Center for Science in the Public Interest v. Reagan,* 802 F.2d 518, 521 (D.C.Cir.1986).

The legislative history strongly supports interpreting pending to include pending fee applications. Congress amended the EHA in a direct response to the *Smith* decision. The Senate Report accompanying the bill, stated that the Supreme Court's decision denying attorneys' fees awards was incorrect and jeopardized the protection and enforcement of the educational rights of handicapped children.  An attorneys' fees provision was necessary to ensure that all parents had representation and could proceed through the courts to enforce their children's right to an appropriate education. S. Report No. 112, 99th Cong., 1st Sess. (1985) (hereinafter "S. Report"). Senator Weiker, the sponsor of both the original act and the amendment, stated that the bill "is intended to be a simple *restoration* and *clarification* of congressional intent." Handicapped Children's Protection Act of 1985: Hearings Before the Senate Subc. on the Handicapped of the Comm. on Labor and Human Resources, 99th Cong., 1st Sess. (1985) (hereinafter "Hearings") (emphasis added).

Congress's decision to make the amendment retroactive to the date of *Smith* dem-

---

1.  The relevant portion of the Amendment states:  The amendment made by section 2 [amending 20 USCS § 1415(e)(4)(A)–(G) shall apply with respect to actions or proceedings brought under section 615(e) [20 USCS § 1415(e)] of the Education of the Handicapped Act after July 3, 1984, and actions or proceedings brought prior to July 4, 1984, under such section which were pending on July 4, 1984.

onstrates its intent to eradicate *all* residual effects of that decision. As plaintiffs point out, it would be anomalous for Congress to enact a statute that reverses *Smith* and then not have it affect a case which the Court of Appeals decided on the authority of *Smith*. Only a comprehensive definition of "pending" would fully eliminate the repercussions of *Smith* and accord those parents who obtained substantive relief for their children between the date of the Supreme Court's decision and the enactment of the amendment the right to reimbursement for their legal expenses.[2]

Moreover, since the number of successful suits which were pending on either the merits or the fees in this two year interim were limited, full retroactive application would not impose a significant drain on the District's resources.[3]

**B.**

■ The School Board's assertion that pending has only one meaning—pending on the merits is flatly wrong. To the contrary, our Circuit has never adopted a uniform definition of "pending." Rather, it analyzes each statute individually. It examines the language of the statute, how the word "pending" fits into the context of the statute and which definition would best comport with the purpose of the statute. Guided by these criteria, the Court adopted a narrow definition of pending in *Nichols v. Pierce,* 740 F.2d 1249 (D.C.Cir.1984) restricting application of the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A) (1982) ("EAJA") to cases pending on the merits. However, two years later when examining an amendment to the EAJA, our Circuit adopted a broad interpretation of pending to include cases pending on the merits and/or on the fees. *Center for Science in the Public Interest v. Reagan,* 802 F.2d 518 (D.C.Cir.1986).

Since these cases examined legislation completely unrelated to the Children's Protection Act, neither provides an authoritative definition of pending for purposes of this proceeding. However, the legislative provision analyzed in *Center for Science* offers greater parallels than the legislation in *Nichols.* In both *Center for Science* and here, the legislation was enacted to clarify existing law regarding fee awards and to correct the courts' misinterpretation of the statutes.

The School Board relegates its discussion of *Center for Science* to a footnote where it argues that the decision is distinguishable because the legislation did not include a retroactivity provision. It therefore argues that the decision did not require the courts to "resurrect dead cases."

The Board's argument confuses and conflates the two critical issues presented by plaintiffs' motion. The question whether Congress *can enact* legislation which "resurrects dead cases" goes to whether Congress is *empowered* to apply the fee provision retroactively to the date of *Smith.* However, the definition of pending goes to the *intent* of Congress when passing the statute.

Finally, contrary to the Board's assertion, a narrow definition of pending would not resolve the constitutional dilemma. No matter how slow the wheels of justice grind, many of the cases which were pending on the merits in July 1984 would have been finally adjudicated by August, 1986. Therefore, the courts would still be required to reopen these cases. Hence, the School Board is in error to suggest that defining "pending" narrowly would circumvent complicated constitutional issues.

The broad language of the fee provision in the Children's Protection Act, combined with the statute's legislative history and its

---

**2.** Most of the parents who testified before the Senate committee had prevailed and obtained appropriate educational placements for their children but were forced to shoulder the legal costs for their efforts. It would be ironic and unfair if these parents whose efforts contributed to enactment of the legislation were themselves denied recovery for their legal expenses.

**3.** In conducting the budgetary impact statement for the amendment, the Congressional Budget Office noted that historically only 42 cases had been successfully litigated under the EACHA of which 23 involved claims. Only 15 parties were ultimately awarded attorneys' fees ranging from $2,000 to $212,000. (S. Report at 4.)

purpose all strongly support the conclusion that the fee provision applies to cases which were pending on either the merits *or* the fees as of July 4, 1984. Accordingly, plaintiffs' suit was pending under the meaning of the Act.

## II. Constitutional Challenges

The School Board raises myriad issues in its challenge to the constitutionality of the Children's Protection Act. It contends that the statute violates the doctrine of separation of powers, exceeds Congress' power under the spending clause and undercuts the sovereign immunity of the states. These challenges though numerous, are vaguely conceived and meritless.

### A. Separation of Powers

■ The Board contends that the Act violates the doctrine of separation of powers because it reverses final orders by the judiciary. For legislation to be struck down because it encroaches on the powers of the judiciary, it must dictate an outcome which reverse the court's decision in the particular case. *United States v. Klein*, 80 U.S. (13 Wall) 128, 20 L.Ed. 519 (1871). The Children's Protection Act may impact cases which were pending on August 4, 1984 but it does not reverse any substan-·tive decision concerning a handicapped child's right to an appropriate education. Nor does it dictate any outcome regarding a court's decision on the fee issue. Rather, the fee provision grants courts discretion to award attorneys' fees to those plaintiffs who prevailed in their proceedings.[4]

### B. Due Process

The Board argues that the retroactivity provision of the legislation must be invalidated because it violates due process rights. It implicitly suggests that the decision in *Smith* which relieved the states

from having to pay the parents' attorneys' fees bestowed upon the states a vested property interest which cannot be retroactively rescinded.[5]

■ To the contrary, the Supreme Court has never ruled that Congress is barred from applying its legislation retroactively. "Legislation which readjusts the rights and burdens is not unlawful solely because it upsets otherwise settled expectations." *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 17, 96 S.Ct. 2882, 2893, 49 L.Ed.2d 752 (1978). Retroactive application of an act will be approved if it is justified by a rational legislative purpose. *Pension Benefit Guaranty Co. v. R.A. Gray & Co.*, 467 U.S. 717, 730, 104 S.Ct. 2709, 2718, 81 L.Ed.2d 601 (1984).

Clearly, Congress had a rational purpose in mind when it enacted the amendment to the Education for all Handicapped Children's Act. It wanted to overturn the impact of *Smith* to ensure that all parents, rich or poor, could resort to the courts to vindicate the rights of their handicapped children. Congress back-dated the fee provision to 1984 in a direct response to the Supreme Court's misinterpretation of the original legislation. The District's assertion that the doctrine of separation of powers prohibits Congress from clarifying the meaning of its own legislation turns the doctrine on its head. *See Seese v. Bethlehem Steel*, 168 F.2d 58 (4th Cir.1948) (retroactive application of Amendment to Fair Labor Standards Act permitted as congressional correction of unexpected Supreme Court decision); *see also* Munzer, A Theory of Retroactive Legislation, 61 Texas L.Rev. 425, 468 (1982); Hochman, Supreme Court and the Constitutionality of Retroactive Legislation, 73 Harv.L.Rev. 692, 721 (1960).

■ The School Board cannot reasonably claim that it has a vested property interest in avoiding payment for attorneys' fees.

---

4. In its report accompanying the bill, the Senate Committee specified that the fee provision should be applied consistent with the fee provisions such as Title VII of the Civil Rights Act of 1964. S.Rep. No. 112 at 14.

5. The School Board is protected by the provisions of the due process clause. Though the

Fifth Amendment refers to taking of "private property," the Supreme Court has interpreted the amendment to encompass the property of state and local governments. *See United States v. 50 Acres of Land*, 469 U.S. 24, 105 S.Ct. 451, 456, 83 L.Ed.2d 376 (1984).

The due process clause protects interests that "a person has already *acquired* in specific *benefits.*" *Board of Regents v. Roth,* 408 U.S. 564, 576, 92 S.Ct. 2701, 2708, 33 L.Ed.2d 548 (1971). Decisions which *relieve* the government from paying fees are not affirmative judgments which constitute benefits protected by the due process clause. At most, a decision which denies a plaintiff monetary relief permits the District to allocate its money elsewhere. Though such a decision creates a loose benefit to the District, it does not rise to the level of a specific benefit protected by the Constitution.

The Board's case authority does not support the proposition that the legislation constitutes a "taking." Its chief authorities, *Daylo v. Administrator of Veterans Affairs,* 501 F.2d 811 (D.C.Cir.1974) and *IAM Nat'l Pension Fund v. Wakefield Ind. Inc.,* 612 F.Supp. 643 (D.D.C.1985), involved legislation which would have specifically reversed a court's final monetary judgment *awarded* to a private plaintiff. Both decisions concluded that once a court granted a plaintiff monetary relief, and that judgment had become final, the individual had a vested right to that judgment. Legislation which deprives an individual of a vested right would constitute a taking in violation of due process.

However, as already noted, the Children's Protection Act does not deprive any entity of a vested monetary judgment. The Act merely overturns the consequences of *Smith* which *denied* prevailing plaintiffs any recovery for their attorneys' fees.

## C. Spending Powers

■ The Board's challenge that the retroactive application of the fee provision exceeds Congress' powers under the spending clause, U.S. Const. art. 1 § 8, is merit-

less. Congress has extremely expansive powers to attach conditions to the receipt of federal funds in grant programs promulgated under the spending clause. *See South Dakota v. Elizabeth Dole,* — U.S. —, 107 S.Ct. 2793, 97 L.Ed.2d 171 (1987); *Steward Machine Co. v. Davis,* 301 U.S. 548, 57 S.Ct. 883, 81 L.Ed. 1279 (1937). However, if Congress intends to impose a condition on the grant of federal monies, it must state these conditions unambiguously. *Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 105 S.Ct. 3142, 3147, 87 L.Ed.2d 171 (1985); *Pennhurst State School v. Halderman,* 451 U.S. 1, 17, 101 S.Ct. 1531, 1539, 67 L.Ed.2d 694 (1981).[6]

If Congress has been faulted in the past for promulgating vague retroactive provisions, it could not have been clearer in this instance. Section 5 of the Act expressly states that the fee provision "shall apply with respect to actions and proceedings which were pending on July 4, 1984." *See Bd. of Education of E. Windsor Regional School v. Diamond,* 808 F.2d 987, 994 (3rd Cir.1986); *Fontenot v. L.A. Bd. of Elem. & Secondary Education,* 805 F.2d 1222, 1225 (5th Cir.1986) (applying amendment to revive parents counterclaim against school district for fees which was dismissed by the district).

## D. Sovereign Immunity

■ The School Board asserts that retroactive application of the fee provision violates the District's sovereign immunity. Plaintiff disputes this allegation and also argues that, in any event, Congress has the authority to override a state's sovereign immunity in order to enforce the 14th amendment.

In *Hutto v. Finney,* 437 U.S. 678, 98

---

**6.** Though the Supreme Court has concluded that the 10th and 11th amendments place limitations on Congress' powers under the spending clause, it has failed to strike down any legislation for exceeding these limits since invalidating the Agriculture Adjustment Act in *United States v. Butler,* 297 U.S. 1, 56 S.Ct. 312, 80 L.Ed. 477 (1936). The Court's decision last term in *Garcia v. San Antonio Metropolitan Transit Authority,*

469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985) granting Congress plenary power under the commerce clause, may have eviscerated even these theoretical limitations. *See* A. Soifer, Truisms That Will Never be True, 57 U.Col. L.Rev. 793 (1986). In any event even if limitations to Congress' spending power survived *Garcia,* they have not been exceeded here.

S.Ct. 2565, 57 L.Ed.2d 522 (1978),[7] the Supreme Court ruled that fee provisions which are imposed as part of costs do not violate the states' sovereign immunity, reasoning that costs are traditionally awarded without regard to sovereign immunity and are an incident of the hearing. *Id.* at 699, 98 S.Ct. at 2578. In amending the EHA, Congress explicitly provided that "the Court may award reasonable attorneys' fees as part of the costs." Sec. 615(e)(4)(B).

But, even if the provision were to infringe upon the states' sovereign immunity, "Congress has plenary power to set aside state's immunity from retroactive relief in order to enforce the substantive guarantees of the Fourteenth Amendment." *Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976). The amendment was enacted pursuant to Congress' power under the 14th amendment to guarantee all persons their rights to due process. Congress implemented the provision to ensure that *all* handicapped children enjoyed the right to an education and had equal access to the courts to enforce their rights to an appropriate education.[8]

### III. Reinstatement of the 1981 Fee Award of $8,424

■ The Board objects to automatic reinstatement of the original fee award. It argues that the new fee provision only entitles attorneys to limited recovery for their efforts. An automatic reinstatement of fees would ignore the statutory restrictions and result in an inflated award. However, contrary to that assertion, the language of the attorneys' fee provision tracks the language of fee provisions in other statutes.[9] Further, the drafters of the Children's Protection Act stipulated that the fee provision should be interpreted consistent with the prevailing interpretation of other fee provisions.[10] In the Senate Report on the bill, the committee instructed that the terms "prevailing party" and "reasonable" be construed consistent with the Supreme Court's decision in *Hensley v. Eckerhart,* 461 U.S. 424, 429, 103 S.Ct. 1933, 1937, 76 L.Ed.2d 40 (1983). S. Report at 13.

In arriving at its original fee award, this Court utilized the lodestar method which forms the basis for the fee determination in *Hensley.* The total award of $8,420 was calculated by considering the number of hours reasonably expended multiplied by a reasonable hourly rate. Counsel submitted affidavits and time sheets demonstrating that the hours claimed were accurate and reasonable expenditures of time. The requested hourly fee of $60, was a rate well within the community rate for the year 1981. *See Library of Congress v. Shaw,* — U.S. —, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986). Since the Court's original determination of the fee award was calculated according to prevailing standards, and based on thorough supporting documents, automatic reinstatement is appropriate.

The Court also determines that the total fee award granted plaintiff's counsel is fair and reasonable under all circumstances.

An appropriate Order will be entered.

---

**7.** *Hutto* concerned an attorneys' fee provision in the Civil Rights Act of 1964. The statutory provision explicitly provided that the fees be imposed as part of costs.

**8.** Senator Lowell Weicker, the sponsor of both the original bill and the amendment stated "A law that mandates a free and appropriate education to handicapped children, that at the same time denies the awarding of legal fees incurred to uphold that mandate is a hollow promise at best and it hurts the families most that can least afford it." Hearings at 3.

**9.** The provision states: "In any action or proceeding brought under this subsection, the court

in its discretion, may award reasonable attorney's fees as part of the costs to the parents— who [are] the prevailing party." 20 U.S.C. § 1415(e)(4)(B).

**10.** The Amendment essentially adopts the language of other statutory fee provisions with one major exception. It expressly forbids the court to award bonuses or a multiplier. 20 U.S.C. § 1415(e)(4)(C), § 1415(e)(2). However this provision does not require a modification or recalculation of plaintiff's fee award. Though in his original 1981 petition, counsel had requested a multiplier of 25 percent to compensate for the complexity of the case, his request was denied.

## ORDER

In accordance with the **Memorandum Opinion** issued on this date, it is this 27th day of July, 1987,

## ORDERED

Plaintiffs' counsel is awarded fees in the amount of $8,420. Counsel is also entitled to fees for prevailing on this motion; appropriate affidavits and documentation to substantiate such claim should be filed by **August 14, 1987.**