**MAX M. and his parents Mr. and Mrs. M., Plaintiffs,**

**v.**

**ILLINOIS STATE BOARD OF EDUCATION, et al., Defendants.**

**No. 82 C 6575.**

United States District Court, N.D. Illinois, E.D.

April 14, 1988.

516

James A. Wrigley, Law Offices of Matthew Cohen, Skokie, Ill., for plaintiffs.

John A. Relias, Vedder, Price, Kaufman & Kammholz, Chicago, Ill., for local defendants.

John A. Simon, Asst. Atty. Gen., Gen. Law Div., Chicago, Ill., for state defendants.

## ORDER

BUA, District Judge.

Plaintiffs move this court pursuant to Fed.R.Civ.P. 54(d) for an award of attorneys' fees under § 2 of the Handicapped Children's Protection Act, 20 U.S.C. § 1415(e)(4). For the reasons stated herein, plaintiffs' motion is granted.

## I. BACKGROUND

The plaintiffs in this case are Max M., a child handicapped within the meaning of the EAHCA, and his parents. For the sake of simplicity, plaintiffs are collectively referred to as the "Ms." The defendants fall into two categories.[1] The first group, designated as the "state defendants," consists of (1) the Illinois State Board of Education, (2) Donald Gill, the Illinois Superintendent of Education, and (3) Edward Copeland, the Chairperson of Illinois State Board of Education.[2] The second group, designated as the "local defendants," consists of (1) New Trier High School District # 203 (District # 203), (2) the New Trier District # 203 Board of Education, (3) Ronald Bickert, Superintendent of Schools in District # 203, and (4) James Wolter, Director of Special Education for District # 203.

The Ms' original complaint presented claims which, although premised on several constitutional and statutory theories, were basically derived from the Education For All Handicapped Children Act (EAHCA).[3] 20 U.S.C. § 1401 et seq. The EAHCA ensures that handicapped children are given access to a free, public education by providing federal funds to assist state and local agencies in meeting the special education needs of handicapped students. Any state educational agency receiving funds under the EAHCA must establish procedures whereby handicapped children and their parents may protect their rights to a "free and appropriate public education." 20 U.S.C. § 1415(a).

In July 1984, the Supreme Court held that attorneys' fees were not available to a prevailing party in an action under the EAHCA. *Smith v. Robinson*, 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984). Subsequently, in August 1986, Congress amended the EAHCA by enacting the Handicapped Children's Protection Act (HCPA). 20 U.S.C. §§ 1415(e), (f). The HCPA expressly authorizes the award of attorneys' fees to prevailing parties in actions proceeding under the EAHCA.[4] By

---

1. Plaintiffs' original complaint included a third group of defendants, designated as the "intermediate defendants." The intermediate defendants consisted of: (1) the North Suburban Special Education District (NSSED); and (2) Stanley Bristol, Superintendent of the NSSED. However, on November 12, 1985, the intermediate defendants were voluntarily dismissed from the case.

2. In *Max M. v. Thompson*, 592 F.Supp. 1450, 1460–62 (N.D.Ill.1984), (*Max M. IV*), this court dismissed state defendant James R. Thompson, the Governor of Illinois, in his official capacity, and all state defendants in their individual capacities. Thus, as of *Max M. IV*, state defendant Thompson ceased being a party to this action.

3. Plaintiffs originally brought claims under the EAHCA, 20 U.S.C. § 1401 et seq.; § 504 of the Rehabilitation Act, 29 U.S.C. § 794; 42 U.S.C. § 1983; the due process and equal protection clauses of the Fourteenth Amendment; the Illinois School Code, Ill.Rev.Stat. ch. 122, ¶ 14–1.01 et seq.; and the Illinois Constitution, Art. I, § 2, Art. X, § 1.

4. Section 2 of the HCPA provides in relevant part:

explicitly providing for attorneys' fees, Congress rejected the holding in *Smith.* Furthermore, Congress made the attorneys' fee amendment effective as of July 4, 1984 to fully nullify the effect of the *Smith* decision.[5] *See* S.Rep. No. 112, 99th Cong. 2d Sess. 2–3 (1985), *reprinted in* 1986 U.S. Code Cong. & Admin.News 1798, 1799–1800.

## II. FACTS

The relevant facts concerning the merits have been previously set forth in this court's five published opinions and need not be detailed for purposes of this order. In this court's order of July 1, 1983, *Max M. v. Thompson,* 566 F.Supp. 1330 (N.D.Ill.1983) (*Max M. I*), the Ms' claims were first addressed. In *Max M. I,* this court dismissed all claims against all defendants except for the claim against the local defendants under § 1415(e)(2) of the EAHCA for reimbursement of the $8,855 expended by the Ms for Max' psychiatric psychotherapy. Thereafter, in light of intervening Seventh Circuit precedent, the Ms moved for reconsideration of their previously dismissed compensatory education and procedural due process claims. In *Max M. v. Thompson,* 585 F.Supp. 317 (N.D.Ill.1984) (*Max M. II*), this court resurrected the Ms' claim for compensatory remedial educational services against all state, intermediate and local defendants but denied Ms' request for reinstatement of their procedural due process claim.

In an order entered on August 13, 1984, *Max M. v. Thompson,* 592 F.Supp. 1437 (N.D.Ill.1984) (*Max M. III*), this court held that the psychotherapy the Ms obtained for Max was a related service under the EAHCA and that violations of the Ms' procedural rights had occurred. However, because material issues of fact remained, parties' cross-motions for summary judgment were denied.

In *Max M. v. Thompson,* 592 F.Supp. 1450 (N.D.Ill.1984) (*Max M. IV*), on all defendants' motions to reconsider, this court modified its previous decision in *Max M. II* and dismissed state defendant Thompson in his official capacity and all state defendants in their individual capacities from the Ms' claim for compensatory education. On March 10, 1986, this court issued a final order holding that Max was denied a free and appropriate public education under the EAHCA due to local defendants' failure to provide Max with required psychotherapy. *Max M. v. Illinois State Bd. of Educ.,* 629 F.Supp. 1504 (N.D.Ill.1986) (*Max M. V*). As a result, local defendants were ordered to reimburse the Ms for the cost of psychotherapy they had privately secured for Max. Summary judgment was also entered in favor of defendants on the Ms' remaining claims under the EAHCA. As a result, the Ms' requests for compensatory education and revocation of Max' diploma were denied.

## III. DISCUSSION

At the time final judgment was entered in this case, the EAHCA did not contain an attorneys' fee provision. Pursuant to the holding in *Smith,* attorneys' fees were not available under other fee shifting statutes for successful actions under the EAHCA.

On August 17, 1987, twelve and one-half months after the HCPA was enacted, the Ms filed their petition for an award of reasonable attorneys' fees. Defendants do not contest the fact that this case was pending on July 4, 1984, the effective date of the HCPA. Therefore, both sides agree that the HCPA attorneys' fee provision applies to this case. Defendants, however, challenge the Ms' request for attorneys' fees under the HCPA on several grounds. This court will first address the various procedural and constitutional issues raised

In any action or proceeding brought under this subsection, the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents or guardian of a handicapped child or youth who is the prevailing party.

**5.** Section 5 of the HCPA provides as follows:

The amendment made by section 2 shall apply with respect to actions or proceedings brought under section 615(e) of the EAHCA [§ 1415(e) of this section] after July 3, 1984, and actions or proceeding brought prior to July 4, 1984, under such section which were pending on July 4, 1984.

by the defendants, before addressing issues concerning the substance of the fee petition.

### A. *Procedural Issues*

#### 1. Local Rule 46

█ Defendants argue that Local Rule 46, which imposes a 90–day time limit on the filing of attorney fee petitions, precludes any attorneys' fee award in this case. Rule 46 of the Rules of the United States District Court for the Northern District of Illinois provides as follows:

> A petition for attorney's fees in a civil proceeding shall be filed within ninety days of the entry of final judgment, provided that the Court upon written motion and for good cause shown may extend the time. A petition for fees shall be denied if it is not filed within the period established by this rule.

Defendants assert that because the Ms failed to comply with Local Rule 46, their motion for fees must be denied. This court is unable to agree.

District courts are free to establish timeliness standards for the filing of attorneys' fee petitions by local rule. *White v. New Hampshire Dept. of Employment Sec.,* 455 U.S. 445, 454 n. 17, 102 S.Ct. 1162, 1168 n. 17, 71 L.Ed.2d 325 (1982). The Northern District of Illinois adopted Local Rule 46 for this purpose. Here, however, Local Rule 46 simply does not apply. The Ms could not comply with Local Rule 46 because the provision authorizing the award of attorneys' fees under which the Ms move was not enacted until after the 90–day time limit had passed. The Ms had no basis for requesting attorneys' fees under the EAHCA until nearly five months after the entry of final judgment.

Nevertheless, defendants urge this court to apply Local Rule 46 as a bar to the fee petition. The defendants contend that in this case, the Local Rule's 90–day time period should not be calculated from the date of entry of judgment, but instead from August 5, 1986, the date the attorneys' fee provision was enacted. Since the Ms did not file their petition within 90 days from the provision's enactment, defendants argue that Local Rule 46 should serve as a

bar. In support of their position, defendants cite *Anton v. Lehpamer,* 787 F.2d 1141 (7th Cir.1986). Defendants' reliance, however, is misplaced.

*Anton* concerns the entirely different issue of when a judicial change in a statute of limitations should be applied retroactively. The issues raised in *Anton,* consequently, shed no light on how Local Rule 46 should be applied, if at all, in the instant case. This court is unaware of Local Rule 46 ever being applied in the manner that the defendants suggest. Instead, this court believes, as the Ms suggest, that the analysis in *Smith v. Bowen,* 815 F.2d 1152 (7th Cir.1987), which specifically concerns Local Rule 46 and the timeliness of attorneys' fee petitions, controls the present case.

In *Smith v. Bowen,* attorneys for a Social Security claimant filed for fees under § 406(b)(1) of the Social Security Act, which authorizes the district court to determine and allow as part of the judgment a reasonable fee not in excess of 25% of the total past due benefit. Because an attorney petitioning for fees under § 406 will not usually know until after 90 days the amount of fees he or she will be requesting as a portion of past due benefits, the court held that Local Rule 46 was not applicable. *Id.* at 1156. The court instead relied solely on Fed.R.Civ.P. 54(d)'s "implicit requirement of reasonableness" in determining that the fee petition was timely filed. *Id.* The court found that the fee petition was filed within a reasonable time even though it was not filed until more than a year after summary judgment had been granted to the claimant. *Id.*

*Smith v. Bowen* makes clear that if objective circumstances render filing a petition for fees impossible within 90 days of the entry of judgment, Local Rule 46 is inapplicable. Contrary to defendants' arguments, this court is neither required nor authorized to select a new starting date for applying the 90–day period specified in Local Rule 46. Rather, in such cases, Fed.R.Civ.P. 54(d) controls the issue of timeliness.

Thus, Rule 46 presents no bar to the Ms' petition for attorneys' fees.

### 2 Fed.R.Civ.P. 54(d)

■ This court now turns to the issue of the timeliness of Ms' fee request. The Ms assert, and defendants do not contest, that a post-judgment motion for attorneys' fees under the HCPA is properly characterized as a Fed.R.Civ.P. 54(d) motion. This court agrees. Rule 54(d) provides for the allowance of costs to prevailing parties in civil cases.[6] The HCPA explicitly amends the EAHCA to provide for attorneys' fees "as part of the costs." 20 U.S.C. § 1415(e)(4)(B). Unlike Local Rule 46, Rule 54(d) "imposes no time limit apart from an implicit requirement of reasonableness." *Spray–Rite Serv. Corp. v. Monsanto Co.,* 684 F.2d 1226, 1248 (7th Cir.1982). To deny a fee petition on the basis of untimeliness, the court must determine that the delay in filing the petition was unreasonable and that the delay unfairly surprised or prejudiced the affected party. *Cruz v. Hauck,* 762 F.2d 1230, 1237–38 (5th Cir. 1985). Neither of the required circumstances exists in the present case.

■ The Ms' fee petition was filed on August 17, 1987, twelve and one-half months after the HCPA was enacted. However, the record indicates that the Ms made written fee demands upon defendants as early as October 26, 1986. After several attempts to negotiate a fee settlement with defendants failed, the Ms formally filed their petition with this court. Taking into account the complexity of this case which encompassed five published opinions, the voluminous documentation submitted in connection with the instant motion, and the time necessary to attempt to negotiate a fee settlement, this court does not find the twelve and one-half month delay in this case unreasonable.

Furthermore, since defendants were well aware of the Ms' intentions concerning the fee petition long before the actual filing date, this court determines that plaintiffs' delay in formally filing did not unfairly surprise or prejudice defendants. Therefore, this court concludes that because the delay in filing the petition was not unreasonable and defendants were not unfairly surprised or prejudiced by the delay, the Ms' motion for attorneys' fees is not untimely filed.

### B. *Constitutional Issues*

#### 1. Separation of Powers

■ Defendants argue that the retroactive provision of the HCPA is unconstitutional as applied in this case because it would operate to nullify a final unappealed order, thus violating the separation of powers doctrine. However, an identical argument was addressed and expressly rejected in *Capello v. District of Columbia Bd. of Ed.,* 669 F.Supp. 14, 1986–87 EHLR Dec. 558:434, 437 (D.D.C.1987). "For legislation to be struck down because it encroaches on the powers of the judiciary, it must dictate an outcome which reverses the court's decision in the particular case." *Id., citing United States v. Klein,* 80 U.S. (13 Wall) 128, 20 L.Ed. 519 (1871). The *Capello* court held that because retroactive application of the HCPA does not affect any substantive decision concerning a child's right to a free and appropriate education under the EAHCA, no violation of the separation of powers doctrine could exist. *Id.* 669 F.Supp. 14, 1986–87 EHLR Dec. at 558:437.

A request for attorneys' fees involves an independent proceeding which does not affect the underlying judgment upon which the fee petition is based. *White v. New Hampshire Dept. of Employment Sec.,* 455 U.S. at 451 n. 13, 102 S.Ct. at 1166 n. 13. Recently, the Supreme Court affirmed this principle in holding that a post-judgment motion for attorneys' fees as costs cannot be viewed as a motion to alter or

---

**6.** Fed.R.Civ.P. Rule 54(d) provides in pertinent part:

Except when express provision therefore is made either in a statute of the United States or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs; but costs against the United States, its officers, and agencies shall be imposed only to the extent permitted by law. Costs may be taxed by the clerk on one day's notice. On motion served within 5 days thereafter, the action of the clerk may be reviewed by the court.

amend the underlying judgment because assessment of costs does not involve reconsideration of any aspect of the decision on the merits. *Buchanan v. Stanships, Inc.,* — U.S. ——, ——, 108 S.Ct. 1130, 1131, 99 L.Ed.2d 289 (1988). Rather such a motion "merely seeks what is due *because of* the judgment." *Id.* (emphasis in original).

In the present case, retrospective application of the HCPA does not reverse any decision on the merits. As observed by the Supreme Court, a motion for attorneys' fees does not imply a change in the judgment but rather what is due as a result of the judgment. *Id.* As such, retrospective application of the HCPA's attorneys' fee provision does not encroach upon the powers of the judiciary and thus does not violate the separation of powers doctrine.

### 2. Spending Power

■ Defendants state that the EAHCA is a funding statute enacted pursuant to the spending clause of the United States Constitution, U.S. Const. Art. 1, § 8. Defendants take the position that legislation passed pursuant to the spending clause is designed to function in much the same way as a contract: Participants in the government program agree to comply with conditions set forth in the legislation in exchange for federal funding.

Defendants argue that the HCPA exceeds Congress' spending power because it impairs the voluntary "contract" implicit in the EAHCA by retroactively imposing conditions upon the receipt of federal funds. In support of this position, defendants rely upon *Pennhurst State School & Hosp. v. Halderman,* 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981). In *Pennhurst* the Court found that Congress acted pursuant to the spending power when it enacted the Developmentally Disabled Assistance and Bill of Rights Act, 42 U.S.C. § 6000 et seq. *Id.* at 18, 101 S.Ct. at 1540. The Court stated:

> Unlike legislation enacted under Section 5 [of the Fourteenth Amendment], however, legislation enacted pursuant to the spending power is much in the nature of a contract. In return for federal funds, the states agree to comply with federally

imposed conditions. The legitimacy of Congress' power to legislate under the spending power thus rests on whether the state voluntarily and knowingly accepts the terms of the "contract." There can, of course, be no knowing acceptance if a state is unaware of the conditions or is unable to ascertain what is expected of it. Accordingly, if Congress intends to impose a condition on the grant of federal moneys, it must do so unambiguously. By insisting that Congress speak with a clear voice, we enable the states to exercise their choice knowingly, cognizant of the consequences of their participation.

*Id.* at 17.

Contrary to defendants' arguments, *Pennhurst* does not address whether Congress may retroactively condition the receipt of federal funds. Rather, *Pennhurst* addressed the issue of whether or not Congress unambiguously intended to do so. "The *Pennhurst* Court focused on Congressional intent as to an ambiguity in the Act, not on retroactive legislation." *Rollison v. Biggs,* 656 F.Supp. 1204, 1208 (D.Del.1987). Consequently, defendants' reliance on *Pennhurst* is misplaced. Even if the EAHCA was passed solely under the spending power, which it was not, the retroactive provisions of the HCPA do not exceed Congress' power under the circumstances because, here, Congress expressly and unambiguously intended that fees be awarded retroactively. *See Id.; Counsel v. Dow,* 666 F.Supp. 366, 1986–87 EHLR Dec. 558:391, 392 (D.Conn.1987); *Capello,* 669 F.Supp. 14, 1986–87 EHLR Dec. at 558:438.

■ Furthermore, the EAHCA and the HCPA by implication were not enacted exclusively under the spending power. The EAHCA, unlike the legislation involved in *Pennhurst,* was enacted pursuant to § 5 of the Fourteenth Amendment as well as the spending power. The EAHCA's statement of purpose reads: "it is in the national interest that the Federal Government assist State and Local efforts to provide programs to meet the educational needs of handicapped children in order to assure *equal protection of the law.*" 20 U.S.C. § 1400(b)(9) (emphasis added). *See Smith*

*v. Robinson,* 468 U.S. at 1009–13, 104 S.Ct. at 3466–69 (EAHCA not simply a funding statute).

The standard of review for legislation enacted under the Fourteenth Amendment is the rational basis test:

> [T]he strong deference accorded legislation in the field of national economic policy is no less applicable when that legislation is applied retroactively. Provided that the retroactive application of a statute is supported by a legitimate legislative purpose furthered by a rational means, judgments about the wisdom of such legislation remains within the exclusive province of the legislative and executive branches....

*Pension Benefits Guaranty Corp. v. R.A. Gray & Co.,* 467 U.S. 717, 729, 104 S.Ct. 2709, 2717–18, 81 L.Ed.2d 601 (1984). The legislative history of the Act clearly shows that the effective date of the HCPA was adopted to undo the effect of the Supreme Court's decision in *Smith v. Robinson.* *See* S.Rep. No. 112, 99th Cong.2d Sess. 1–15, *reprinted in* 1986 U.S.Code & Ad. News 1798, 1799–1805. The legislative purpose of the HCPA's retroactive attorneys' fee provision is to "clarify the availability of rights afforded to parents of handicapped children so that action and proceedings successfully resolved in that period [between July 4, 1984 and the date of enactment] will not be treated differently from those resolved ... after passage of the Act." *Tonya K. v. Chicago Bd. of Educ.,* No. 81 C 580, slip op. at 8 (N.D.Ill. July 20, 1987) [available on WESTLAW, 1987 WL 14699], *citing* 132 Cong.Rec. S9278 (daily ed. July 17, 1986) (statement of Sen. Kerry). Removing the adverse effect of the *Smith* decision on the rights of parties prevailing under the EAHCA prior to the HCPA's enactment is clearly a legitimate legislative purpose. Retroactively applying the HCPA to all cases pending on or filed after July 4, 1984 (the day preceding the Court's decision in *Smith*) is a rational means of furthering the stated congressional purpose. As such, Congress acted within its powers in making the attorneys' fee provision retroactive.

### 3. The Eleventh Amendment

■ State defendants argue that the Eleventh Amendment bars an award of attorneys' fees against them. In support of this position, the state defendants primarily rely on *Gary A. v. New Trier High School,* 796 F.2d 940 (7th Cir.1986). In *Gary A.* the Seventh Circuit held that the Eleventh Amendment immunizes the state defendants from monetary damages for violations of the EAHCA. However, *Gary A.* is not controlling here because the court addressed only the issue of a state's substantive liability for money damages under the EAHCA, not the issue of a state's liability for attorneys' fees under the subsequently enacted HCPA.

In *Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976), the Supreme Court held that the Eleventh Amendment does not bar retroactive monetary awards against the states when Congress authorizes such awards pursuant to its power to enforce § 5 of the Fourteenth Amendment. The *Fitzpatrick* Court reasoned that since the Fourteenth Amendment expanded Congress' powers to the diminution of state powers, the power of Congress to enforce the Fourteenth Amendment limits the Eleventh Amendment's bar of private suits against states for monetary relief. *Id.* at 456, 96 S.Ct. at 2671. *See also Hutto v. Finney,* 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978) (In order to enforce the Fourteenth Amendment, Congress has plenary power to set aside a state's immunity from retroactive relief).

As noted earlier, the EAHCA and the HCPA by implication were enacted pursuant to Congress' power to enforce the Fourteenth Amendment. Accordingly, *Fitzpatrick* and *Hutto* are controlling here. Congress, in enacting the HCPA through its exercise of power under § 5 of the Fourteenth Amendment, abrogated the state's Eleventh Amendment immunity.

■ Furthermore, *Hutto* established that the Eleventh Amendment does not bar an award of attorneys' fees against the state where, as here, the relevant statute

provides for fees as part of the costs. *Hutto*, 437 U.S. at 696–98, 98 S.Ct. at 2576–77. In *Hutto*, the Supreme Court held that Congress may authorize an award of attorneys' fees as an item of costs without expressly stating that it intends to abrogate the states' Eleventh Amendment immunity. *Id.* Section 2 of the HCPA authorizes the district court to "award reasonable attorneys' fees as part of the cost...." Thus, for this additional reason, the Eleventh Amendment does not bar an award of attorneys' fees as costs against state defendants.

## C. *The Fee Petition*

### 1. Prevailing Party Under the HCPA

The threshold requirement for an award of attorneys' fees under § 2 of the HCPA is that the plaintiff be a prevailing party. 20 U.S.C. § 1415(e)(4)(B). The legislative history of the HCPA directs that the term "prevailing party" is to be construed in accord with the United States Supreme Court's decision in *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). *See* H.R.Conference Rep. No. 687, 99th Cong.2d Sess. 5–7, *reprinted in* 1986 U.S.Code & Ad.News 1807, 1808–09. S.Rep. No. 112, 99th Cong.2d Sess. 1, 13–14, *reprinted in* 1986 U.S.Code & Ad.News 1798, 1803–05. In *Hensley*, the Supreme Court explains that "plaintiffs may be considered prevailing parties for attorneys' fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley*, 461 U.S. at 433, 103 S.Ct. at 1939. The Court describes this standard as a liberal one which only brings the plaintiff over the statutory threshold. *Id.* Once this requirement is met, the inquiry becomes what fee is reasonable in light of the particular circumstances of the case. *Id.*

In the present case, the Ms succeeded in establishing that Max was deprived of a free and appropriate education under the EAHCA by virtue of local defendants' failure to provide Max with required psychotherapy. Although defendants assert that recovery of $8,855 is negligible in light of the relief originally sought by the Ms, establishing that Max did not receive a free and appropriate education was a central issue in this case.

The Ms' original complaint claimed that defendants' actions resulted in numerous constitutional and statutory violations of Max' rights as a handicapped student.[7] Count I of the two-count complaint focused on defendants' alleged deficiencies in providing Max with an appropriate public education. The second count challenged the validity of administrative review procedures adopted by the State of Illinois pursuant to the EAHCA. Although all of Count II and most of Count I failed to survive defendants' initial motion to dismiss,[8] significant effort was expended in the four ensuing years litigating the remaining issues raised under the Ms' EAHCA claims. Relief sought for the alleged violations of the EAHCA included compensatory education for Max' education, revocation of Max' diploma, and reimbursement of sums expended obtaining EAHCA required services for Max, including $8,855 spent procuring psychotherapy.[9] Complaint ¶ 75(i)–(iii). In a series of four subsequent orders,[10] this court determined that Max was deprived of a free and appropriate education due to local defendants' failure to provide Max with psychotherapy required under the EAHCA. As a result, local defendants were ordered to reimburse the Ms for the $8,855 they expended obtaining psychotherapy for their son. The Ms, however, failed in their attempt to

---

**7.** *See supra* note 3.

**8.** *See Max M. I,* 566 F.Supp. 1330 (N.D.Ill.1983).

**9.** Although Ms also sought damages in the amount of $1,000,000 in Count I, this request was not based on alleged violations of the EAHCA, but instead rested on claims asserted under § 504 of the Rehabilitation Act, the United

States and Illinois Constitutions, and 42 U.S.C. § 1983. *See* Complaint ¶ 75(iv).

**10.** *See Max. M. II,* 585 F.Supp. 317 (N.D.Ill. 1984); *Max M. III,* 592 F.Supp. 1437 (N.D.Ill. 1984); *Max M. IV,* 592 F.Supp. 1450 (N.D.Ill. 1984); *Max M. V,* 629 F.Supp. 1504 (N.D.Ill. 1986).

secure revocation of Max' diploma and compensatory educational services. Though local defendants failed to apprise the Ms of certain procedural rights they possessed under the EAHCA, this court found that the Ms played a meaningful role in formulating each of Max' educational programs and that such participation substantially comported with the purpose of the procedures specified by the EAHCA.[11] *Max M. V,* 629 F.Supp. at 1517–18. Because this court determined that with exception of psychotherapy, local defendants provided Max with a program of special education which met the minimum requirements for a free and appropriate education under the EAHCA, and that the Ms substantially participated in developing each of Max' educational programs, the Ms' request for revocation of Max' diploma and compensatory education was denied. *Id.* at 1518–19.

■ A plaintiff need not succeed on substantially all significant issues or receive all relief originally sought to qualify as a prevailing party. *Fast v. School Dist. of City of Ladue,* 728 F.2d 1030, 1033 (8th Cir.1984) (en banc). In *Fast* a tenured school teacher who was terminated without a prior hearing claimed that her procedural due process rights were violated and that procedures established for selecting tenured educators for termination were unconstitutionally vague. Although the teacher eventually prevailed on her procedural due process claim, the only relief obtained was an award of $1 in nominal damages and an order directing the school district to provide a post-termination hearing together with a written statement of reasons for the termination. *Id.* at 1032. The teacher's requests for monetary damages, back pay, reinstatement, revision of her employment record, and reformation of the challenged hearing procedures were denied. *See Fast v. School Dist. of City of Ladue,* 543 F.Supp. 785, 787 (E.D.Mo.1982). Despite the limited success achieved and the small fraction of relief obtained, the Eighth Circuit ruled that the teacher met the statutory threshold for an award of attorneys'

fees. *Fast,* 728 F.2d at 1032–34. Although characterizing the teacher as a prevailing party, the court unequivocally stated that an award of all fees requested would be inappropriate. *Id.* at 1035. Instead, the district court was instructed to consider the relationship between the fees requested and the success achieved in determining a reasonable award. *Id.*

■ *Fast* is similar to the present case. In both, the plaintiffs asserted numerous constitutional and statutory claims and sought a variety of monetary and injunctive relief. Although the respective plaintiffs failed to prevail on all claims pursued and secure all relief originally requested, each succeeded on at least one significant claim and obtained a portion of the benefits they initially sought. Under the liberal guidelines articulated in *Hensley* and applied *Fast,* this court is compelled to find that the Ms are prevailing parties.

This determination, however, does not entitle the Ms to an award of attorneys' fees from all defendants originally named in the complaint. To qualify as a prevailing party, a plaintiff must succeed in obtaining some relief from the defendant against whom attorneys' fees are sought. "A favorable judicial statement of law in the course of litigation that results in judgment against the plaintiff does not suffice to render him a 'prevailing party.'" *Hewitt v. Helms,* — U.S. ——, 107 S.Ct. 2672, 2675, 96 L.Ed.2d 654 (1987).

In the present case, the only relief secured was reimbursement of $8,855 expended on Max' psychotherapy. In *Max M. I,* the Ms' claim for reimbursement was sustained only with respect to local defendants. *Max M. I,* 566 F.Supp. at 1340. The state and intermediate defendants eventually succeeded in obtaining dismissal or summary judgment with respect to all claims asserted in the Ms' complaint. Although it is noted that during the course of this case several legal issues involving these defendants were resolved in the Ms'

---

**11.** The Ms' argument that local defendants failed to employ qualified special education teachers was also rejected by this court. No proof existed that any of Max' teachers at District 203 lacked appropriate educational credentials. *Max M. V,* 629 F.Supp. at 1517.

favor, *Hewitt* clearly prohibits an award of attorneys' fees unless some relief is actually obtained. Since the Ms only succeeded in obtaining relief from local defendants, no basis exists for holding state and intermediate defendants liable for attorneys' fees. *See United Handicapped Federation v. Andre*, 622 F.2d 342, 348 n. 6 (8th Cir.1980). As the Ms are not prevailing parties with regard to state and intermediate defendants, the Ms' petition for fees against these defendants is denied. However, because the Ms prevailed against local defendants, the Ms' petition for attorneys' fees against these defendants is sustained. Liability for any fees awarded in this case will rest exclusively with local defendants.

### 2. Special Circumstances

Though a plaintiff meets the statutory threshold for an award of attorneys' fees, special circumstances might exist which render such an award unjust. *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968). Local defendants assert that the prejudice caused by the retroactive effect of the HCPA renders an award of fees in this case unjust. Local defendants note that at no time during the pendency of this case did any indication exist that the Ms might be entitled to an award of attorneys' fees. Because the enactment of the HCPA essentially altered the parties' respective rights after a final judgment was entered, local defendants argue that special circumstances exist which require that Ms' petition for fees be denied. Advancing this argument, local defendants rely on *Abu–Sahyun v. Palo Alto Unified School Dist.*, 1986–87 EHLR Dec. 558:275 (N.D.Cal.1987), wherein a retroactive award of attorneys' fees under the HCPA was denied. However, examination of that case fails to demonstrate support for local defendants' position.

In *Abu–Sahyun*, the parties entered into a settlement agreement hours before a scheduled preliminary injunction hearing. The terms of the settlement contained no provision for payment of attorneys' fees by defendants. Shortly after the settlement,

the HCPA was enacted, and the plaintiff petitioned for an award of attorneys' fees. Although concluding that the settlement rendered the plaintiff a prevailing party under the HCPA, the court declined to grant the plaintiff's petition. *Id.* at 558:227. The court observed that at the time of the settlement neither side had any reason to believe that the plaintiffs might be entitled to an award of attorneys' fees. *Id.* Noting that settlement was reached and relief was afforded without the delay, expense and uncertainty that long-term litigation would have entailed, the court determined that awarding attorneys' fees which were never contemplated by the parties would discourage settlements in the future. *Id.* In reaching its decision, the court acknowledged authority supporting the retroactive imposition of attorneys' fees under the HCPA when relief was secured by way of judicial order. *Id., citing Board of Educ. of East Windsor Regional School Dist. v. Diamond*, 808 F.2d 987, 994–95 (3d Cir.1986). The court explained that such precedent was distinguishable since it did not address the retroactivity question in the context of a settlement made before the attorneys' fee amendment. *Abu–Sahyun*, 1986–87 EHCR at 558:278. Given that relief was afforded by way of settlement rather than judicial order, the court held that retroactively awarding attorneys' fees under the HCPA would result in an abuse of discretion and thus denied the fee petition. *Id.*

Contrary to local defendants' assertions, *Abu–Sahyun* does not apply to cases where relief is obtained after litigation by court order. The *Abu–Sahyun* court specifically noted that the special circumstance preventing an award of attorneys' fees was the fact that relief was secured by way of settlement prior to the passage of the HCPA. On this basis the court distinguished a conflicting Third Circuit decision which directed a retroactive award of fees in a case where plaintiff's relief was obtained pursuant to a judicial order. *See Board of Educ. of East Windsor Regional School Dist. v. Diamond*, 808 F.2d 987, 994–95 (3d Cir.1986).

The situation in the present case is akin to that in *Diamond,* not *Abu–Sahyun.* The *Abu–Sahyun* court's reasoning that settlements might be discouraged by a retroactive award of fees is inapplicable where defendants, such as those in the present case, litigate to the bitter end. At the core of local defendants' argument is the proposition that attorneys' fees should not be awarded retroactively. This proposition, however, was addressed and expressly rejected in the context of defendants' constitutional arguments. This court declines local defendants' invitation to ignore Congress' intent that the HCPA apply to all cases pending as of July 4, 1984. Accordingly, this court fails to find any special circumstances existing in this case which render an award of reasonable attorneys' fees unjust.

### 3. The Lodestar Computation

The next step in the *Hensley* analysis is computing the lodestar, the product of hours reasonably spent times a reasonable hourly rate. *Hensley,* 461 U.S. at 433, 103 S.Ct. at 1939. After examining the time records of plaintiff's attorneys, the district court must determine whether reductions are necessary for inadequate documentation, excessive or unnecessary time expenditures, or work on unrelated claims. *Id.;* 20 U.S.C. § 1415(e)(4)(F). Reasonable hourly fees are calculated according to the prevailing market rates in the relevant community for the kind and quality of services furnished. *Id.*

The Ms request an award of $58,404 for time reasonably expended by their counsel. This amount represents 482.15 hours of attorney time and 213.75 hours of law clerk time. Affidavits and time records submitted by Ms' counsel reflect the following totals: (1) 297.25 hours recorded by attorney Matthew D. Cohen at a hourly rate of $125; (2) 146 hours recorded by attorney Malcolm Rich at a hourly rate of $75; (3) 27.2 hours recorded by attorney Maude Schaafsma at $75 per hour; (4) 11.7 hours recorded by attorney James Wrigley at $75 per hour; and (5) 213.75 hours recorded by law clerks at $35 per hour.

Local defendants assert that hours claimed by Ms' attorneys should be substantially reduced for excessive billing. This court has examined each of the time charges in question and is unable to find counsel's billings excessive or unreasonable. Comparing the hours claimed by Ms' attorneys to fee petitions presented to this court in other cases of similar size and complexity, the hours expended in this case are quite small and indicate exceptional efficiency on the part of counsel. As such, no reduction for unnecessary or excessive time charge is warranted.

Local defendants also challenge the adequacy of time records submitted by Ms' counsel. Time records are deficient when they fail to include a clear description of work performed, the day on which it was performed, and the number of hours expended. *See Shakman v. Democratic Org. of Cook County,* 634 F.Supp. 895, 900 (N.D.Ill.1986). A review of the time records submitted indicates that foregoing requirements are generally met. However, because a small but significant number of entries in attorney Cohen's time records inadequately describes work performed, some reduction is necessary.

In determining the amount of hours to be excluded for insufficient documentation, a district court need not identify each vague entry and limit the reduction to the time covered by the entry. *Ohio–Sealy Mattress Mfg. Co. v. Sealy, Inc.,* 776 F2d 646, 657 (7th Cir.1985). Rather, after examining the time records, the district court may elect to reduce the hours claimed by a reasonable percentage. *Id.* This court will employ the latter approach mentioned in *Ohio–Sealy.* In the judgment of this court, a 10% reduction in attorney Cohen's total hours is a reasonable adjustment for the inadequacies in his time reports. Rounded to the nearest hour, attorney Cohen's time will be reduced by 30 hours.

Local defendants next assert a reduction is mandated for time spent by Ms' attorneys on nonrelated unsuccessful claims. Local defendants classify the claims asserted in Ms' complaint into three categories: (1) a claim for educational, intellectual, vo-

cational, and social malpractice for failing to properly educate Max; (2) a challenge against the administrative review process; and (3) a claim for reimbursement for sums spent obtaining services for Max. Because the Ms only succeeded in prevailing on their claim for reimbursement, local defendants argue that all time attributable to the Ms' remaining claims should be eliminated from the lodestar computation.

■ Although this court agrees that Ms' failure to prevail on unrelated claims requires a time reduction, local defendants' characterization of Ms' claims is inaccurate. Whether claims are related turns on whether the claims derive from a common core of facts or are based on related legal theories. *Hensley*, 461 U.S. at 435, 103 S.Ct. at 1940. Under this analysis, claims which are unrelated are those which could be properly brought in separate legal actions. *Id.* Applying this test, claims asserted in Ms' complaint fall into two distinct categories. The claims in Count I stem from facts concerning the type and nature of education Max was entitled to receive from defendants. Although articulated in a variety of constitutional and statutory theories, all claims in Count I focused on defendants' alleged deficiencies in providing Max with an appropriate public education. With one exception,[12] the forms of relief sought for the claims articulated in Count I were the same: (1) reimbursement for services obtained for Max at the Ms' expense; (2) revocation of Max' diploma; and (3) compensatory education. Although the Ms' success was limited, the claims asserted in Count I share a common core of facts and are sufficiently related to preclude reduction.

12. *See supra* note 9.

13. Local defendants also object to time charges resulting from Ms' participation in the administrative review proceedings. However, the HCPA provides that fees may be awarded in any "action or proceeding" under § 1415(e)(4)(B). Senate Report No. 112 states that § 2 of the HCPA "should be interpreted consistent with fee provisions of statutes such as Title VII of the Civil Rights Act of 1964 which authorizes courts to award fees for time spent by counsel in mandatory administrative proceedings under

■ No dispute exists with regard to the claims presented in Count II. Both sides agree that claims related to the propriety of the state administrative review process are separate and unrelated to issues raised in Count I. Because the Ms failed to prevail on Count II, a reduction for time spent on unrelated claims is necessary.

The history of this case reveals that the claims raised in Count II were short lived. Initially, the Ms' claims regarding the state administrative review process were dismissed in *Max M I.* Nine months later in *Max M II,* reconsideration of the Ms' administrative review claims was denied. Records submitted by Ms' counsel indicate a total of 29 hours of law clerk time was spent researching and writing arguments asserted under Count II. Although attorney Cohen's time reports fail to detail hours spent working exclusively on the administrative review claims, approximately 90 hours are attributed to preparation of pleadings and written argument prior to the time *Max M II* was decided. A review of the briefs submitted by Ms' attorneys in connection with *Max M I* and *II* shows that relative to Count I, limited attention was devoted to issues raised in Count II. Resolving all doubts in favor of local defendants, it is safe to assume that no more than 30 hours or one third of attorney Cohen's relevant time charges prior to *Max M II* were related to work on the state administrative review claims. Combined with a 30–hour reduction for inadequate documentation, a total of 60 hours will be deducted from attorney Cohen's time. Similarly, a 29–hour reduction will be made to the total amount of time billed by law clerks.[13]

those statutes. *See New York Gaslight Club, Inc. v. Carey,* 447 U.S. 54, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980)...." S.Rep. No. 112, 99th Cong. 2d Sess. 1, 14, *reprinted in* 1986 U.S. Code & Ad. News 1798, 1804. In *New York Gaslight Club, Inc. v. Carey,* the Supreme Court interpreted the words "or proceedings" contained in an identical provision in Title VII to refer to proceedings other than court actions, i.e., administrative proceedings. A similar construction follows under the HCPA. Since exhaustion of administrative remedies is a prerequisite to filing a civil action under the EAHCA, denying fees for work

The reasonableness of Ms' counsel's hourly rates is the next point of contention. The Ms assert their attorneys are entitled to an award based on current hourly rates. Relying on the Seventh Circuit's decision in *Ohio–Sealy,* the Ms contend that the use of present billing rates is necessary to compensate for inflation and the time value of money. *Ohio–Sealy,* 776 F.2d at 663. Local defendants believe that an excessive fee will result if current hourly rates are applied to work performed prior to 1985. Instead, local defendants urge that actual hourly rates for pre–1985 work be used to compute the lodestar.

The HCPA clearly states that no "bonuses or multipliers" may be used in calculating a fee award. 20 U.S.C. § 1415(e)(4)(C). Whether an adjustment for delay in payment constitutes a bonus or multiplier under the HCPA, however, is unclear. Although the amendment's legislative history is silent on this issue, the inclusion of a multiplier prohibition suggests that Congress sought to strike a balance between the school district and the deprived party by limiting the use of public education funds for the payment of attorneys' fees.

Factors recognized as valid considerations for awarding a bonus or multiplier are premised on the rationale that the product of reasonable hours times a reasonable hourly rate does not produce a reasonable fee award. Because the results obtained were exceptional, the quality of representation was unusually high or the probability of success was extremely remote, prevailing parties often argue that an upward adjustment to the lodestar is necessary to arrive at a fee which will adequately compensate their attorneys and serve as an inducement to the legal community to accept similar cases in the future. Largely due to the subjective nature of such criteria and difficulty faced in making a proper enhancement for such factors, the Supreme Court limits the use of bonuses or multipliers to a select group of "rare and exceptional" cases. *See Pennsylvania v. Delaware Valley Citizens' Council For Clean Air,* — U.S. —, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987) (*Delaware Valley II*): *Pennsylvania v. Delaware Valley Citizens' Council For Clean Air,* 478 U.S. 546, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986) (*Delaware Valley I*).

Arguments concerning adjustments for delay in payment are received differently by the Court. In *Delaware Valley II* the Court drew a distinction between adjustments for delay in payment and enhancements based on the contingency of success. *Delaware Valley II,* 107 S.Ct. at 3081–82. Although a divided Court criticized the use of fee enhancements for the risk of loss assumed in a contingent fee case, adjustments for delay were deemed permissible. *Id.* at 3082. In reaching this determination, the Court recognized that when payment is delayed, the value of the use of money is deprived. *Id.* at 3081. To compensate for this deprivation, the Court approved methods of setting fees for prevailing counsel by awarding current rates for all work performed or adjusting an award based on historical rates to reflect its present value. *Id.*

The Supreme Court's treatment of the delay consideration suggests it differs from factors which are commonly associated with the award of a multiplier or bonus. Adjustments for delay in payment seek to offset the effects of inflation and the time value of money. Enhancements for contingency, success or quality of representation proceed from the subjective premise that an award based on hours reasonably worked times a reasonable hourly rate will not provide adequate compensation for prevailing counsel. If the purpose of the limitation on the use of bonuses and multipliers is to ensure prevailing parties are made whole to the extent of their success while preventing the award of windfall fees to prevailing counsel, considering the effects

at the administrative level renders the HCPA's language meaningless. The only reasonable interpretation of the "or proceedings" language dictates that counsel's time spent on the administrative hearings be included in the lodestar computation. *See Burpee v. Manchester School Dist.,* 661 F.Supp. 731, 1986–87 EHLR Dec. 558:273 (D.N.H.1987) (fee award for time spent during administrative proceedings is permitted by HCPA).

of delay in setting a reasonable fee under the HCPA appears appropriate.

Unlike factors commonly associated with an award of a multiplier or bonus, adjustments for delay merely seek to replicate the value of fees at the time work was performed, and not provide a special reward for initiating and litigating the action. The aim of delay adjustments is returning the prevailing parties to the financial position which would have existed had they never had to pay attorneys' fees. This aim appears consistent with the purpose of the HCPA because full compensation for sums spent on reasonable attorneys' fees would be ensured to prevailing parties. In the same light, adjustment for delay does not conflict with the HCPA's prohibition on multipliers or bonuses since such an adjustment is not premised on providing a special reward to prevailing counsel for accepting and litigating the action. As such, the HCPA does not preclude consideration of delay in setting a reasonable fee.

As noted in *Delaware Valley II*, the effects of delay may be offset by computing the lodestar on the basis of current hourly rates. Applying present rates to hours reasonably expended by prevailing counsel, this court arrives at a lodestar figure of $49,990. *See* Appendix A.

### 4. Reduction for Limited Success

The final step in computing a reasonable award of attorneys' fees is examining the amount of the award in light of success achieved. *Hensley*, 461 U.S. at 440, 103 S.Ct. at 1943. As the *Hensley* Court explains:

> [T]he extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorneys' fees.... Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised. But where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained.

*Id.* In assessing the results achieved, a court may consider both tangible and intangible benefits resulting from the plaintiff's success. *Lenard v. Argento*, 808 F.2d 1242, 1248 (7th Cir.1987). Tangible benefits refer to the personal relief secured by the plaintiff as a result of the litigation. Intangible benefits concern the external effects of plaintiff's success on others similarly situated. Classified as "external benefits," this later consideration plays an important role in ascertaining the overall significance of a plaintiff's success. *Id.*

As previously noted by this court, the Ms succeeded in establishing that Max was denied a free and appropriate education under the EAHCA because of local defendants' failure to provide Max with required psychotherapy. Based on this finding, local defendants were ordered to reimburse the Ms for $8,855 they expended on psychotherapy for Max. The Ms, however, failed to secure any additional relief on the remaining claims in their complaint. Nevertheless, the Ms assert that many legal issues decided in the course of this case furthered the rights of all handicapped children and thus resulted in substantial external benefits which must be considered in determining the success achieved.

The Ms first claim that this court's ruling in *Max M. III* that psychotherapy is a related service under the EAHCA significantly benefited handicapped children as a whole. *See Max M. III*, 592 F.Supp. at 1441–42. While acknowledging local defendants did not dispute that psychotherapy is an EAHCA service, the Ms contend that whether an issue is resolved by the court or by agreement is unimportant in weighing the success obtained. While this proposition may be true, the question of whether psychotherapy is a related service appeared relatively well settled before the decision in *Max M. III*. *See Id.* at 1442, *citing Papacoda v. Connecticut*, 528 F.Supp. 68 (D.Conn.1981); *Gary B. v. Cronin*, 542 F.Supp. 102 (N.D.Ill.1980); and *In the Matter of "A" Family*, 184 Mont. 145, 602 P.2d 157 (1979). Thus, any benefit to handicapped children resulting from resolution of the psychotherapy issue is not attributable to this case.

The Ms' second assertion regarding external benefits stems from this court's holding in *Max M. III* concerning reimbursement for physician provided related services. *See Max M. III*, 592 F.Supp. at 1444–45. Clearly, the framework developed in *Max M. III* for analyzing the nature of services deemed related under the EAHCA and the rate of reimbursement for parents' expenditures on related services benefited other handicapped children aside from Max.[14] As such, this factor weighs favorably in ascertaining the level of Ms' success.

The third favorable ruling highlighted by the Ms concerns the determination in *Max M. I* that a five-year statute of limitations rather than the 35-day limitations period prescribed in the Illinois Administrative Review Act applies to EAHCA actions in Illinois. *Max M. I*, 566 F.Supp. at 1334–35. Although local defendants note that the Illinois General Assembly recently enacted a new 120-day statute of limitations for special education appeals to state courts, EAHCA litigants in Illinois enjoyed the benefit of the longer limitations period for nearly five years. This factor also plays a role in determining the significance of Ms' success.

The Ms next refer to this court's ruling in *Max M. IV*, 592 F.Supp. at 1457–58, concerning the effect of the EAHCA's requirement that eligible children receive a free and appropriate education until the age of 21. *See* 20 U.S.C. § 1412(2)(B). *Max M. IV*, rejected the contention that § 1412(2)(B) unconditionally terminated the school's responsibility to provide EAHCA services once a child reached the age of 21. Instead, *Max M. IV* held that where a handicapped child is deprived of a free and appropriate education and his parents are not informed of their procedural right to seek review of deficient educational programs, compensatory education at public expense may be awarded even if the child has passed the age of 21.

Local defendants attempt to diminish the significance of this ruling on the ground that this court was not the first to determine that compensatory education could be awarded past the age of 21. *See Campbell v. Talladega County Bd. of Educ.*, 518 F.Supp. 47, 56 (N.D.Ala.1981). Although cited in *Max M. IV*, *Campbell* can hardly be viewed as determinative on the age limitation issue. *Campbell* did not discuss the effect of § 1412(2)(B) on the provision of EAHCA services to children exceeding the age of 21, but merely ordered that compensatory education be provided "for two years past [plaintiff's 21st] birthday." *Campbell*, 518 F.Supp. at 56. The decision in *Max M. IV* was the first to affirmatively establish a reviewing court's authority under § 1415(e)(2) to order the provision of educational services to eligible children past the age of 21. Moreover, in concluding that Max' age did not moot his claim for compensatory education, *Max M. IV* addressed and distinguished two cases reaching an opposite result on the age limitation issue. *See Max M. IV*, 592 F.Supp. at 1458–59 n. 6. Thus, contrary to local defendants' assertions, whether a claim for compensatory education is cognizable after a child reaches 21 was not settled law at the time *Max M. IV* was decided. Because this court believes handicapped children as a whole benefited from this determination, it will be considered in assessing the Ms' success.

The final relevant holding identified by the Ms relates to this court's determination in *Max M. V*, 629 F.Supp. at 1517–18, that local defendants violated the Ms' procedural rights under the EAHCA. However, little importance can be attached to this ruling since it did not resolve any previously unsettled issue and did not benefit other handicapped children. Because no relief was ultimately awarded as a result of the

---

**14.** *Max M. III* held in relevant part that the fact that a physician provides a related service does not automatically render the treatment a medical service for which reimbursement is not required. The nature of the treatment rather than the identity of the provider controls whether the service is a "related service." *Max M. III*, 592 F.Supp. at 1444–45. Reimbursement for privately obtained related services, however, is limited to the amount qualified school personnel would normally and reasonably charge for such services. *Id.*

procedural violations, the noted ruling in *Max M. V* does not enhance the Ms' overall success.[15]

In view of the external benefits generated and the personal relief obtained, the Ms assert their overall results were excellent. As such, the Ms contend they are entitled to a full award of attorneys' fees. This court is unable to agree.

Although a number of important decisions concerning the rights of parents and handicapped children under the EAHCA resulted from this action, this court cannot overlook the fact that the Ms only succeeded in obtaining a fraction of the relief originally sought. Though the Ms obtained reimbursement for Max' psychotherapy, they failed to secure revocation of Max' diploma, compensatory education, and reimbursement for funds expended in connection with Max' placement in a residential educational facility. This relief was clearly the most important sought by the Ms.

Moreover, the Ms' request for monetary damages was denied when the Ms' non-EAHCA claims were dismissed in *Max M. I.* Even considering the benefits accruing to other handicapped children as a result of this action, the level of success achieved in this case can only support a limited award of attorneys' fees. In the view of this court, a fifty percent reduction in the lodestar will produce a fee which is reasonable in light of the results obtained. Accordingly, the Ms' petition for attorneys' fees is granted to the extent of $24,995. *See* Appendix B.

## IV. CONCLUSION

For the foregoing reasons, plaintiffs' motion for an award of attorneys' fees is granted. Local defendants are ordered to pay plaintiffs a total of $24,995 in attorneys' fees.

IT IS SO ORDERED.

### APPENDIX A
#### Calculation of Lodestar Amount

| Counsel | Total Hours Allowed | Current Hourly Rate | Lodestar Amount |
|---|---|---|---|
| Mr. Cohen | 237.25 (60) | $125 | $29,656.25 |
| Mr. Rich | 146.0 | 75 | 10,950.00 |
| Ms. Scaafsma | 27.2 | 75 | 2,040.00 |
| Mr. Wrigley | 11.7 | 75 | 877.50 |
| Law Clerks | | | |
| – Ms. Ferst | 89.25 | 35 | 3,123.75 |
| – Ms. Morawicz | 95.5 | 35 | 3,342.50 |
| – Ms. Levenson | 0  (29) | – | – |
| TOTAL LODESTAR AMOUNT | | | $49,990.00 |

(  ) indicates hours disallowed.

### APPENDIX B
#### Calculation of TOTAL FEE AWARD

| Counsel | Lodestar Amount | Reduction for Limited Success | Fee Award |
|---|---|---|---|
| Mr. Cohen | $29,656.25 | 50% | $14,828.12 |
| Mr. Rich | 10,950.00 | 50% | 5,475.00 |
| Ms. Scaafsma | 2,040.00 | 50% | 1,020.00 |
| Mr. Wrigley | 877.50 | 50% | 438.75 |
| Law Clerks | | | |
| – Ms. Ferst | 3,123.75 | 50% | 1,561.88 |
| – Ms. Morawicz | 3,342.50 | 50% | 1,671.25 |
| TOTAL FEE AWARD | | | $24,995.00 |

15. Although the Ms also note two favorable rulings against state defendants, consideration of such rulings in inappropriate in assessing Ms' success against local defendants. *See Hewitt v. Helms,* —— U.S. ——, 107 S.Ct. 2672, 96 L.Ed.2d 654 (1987).